LINCH *et al. vs.* McINTYRE *et al.*

| 78 | 209 |
| 93 | 821 |
| 78 | 209 |
| d96 | 339 |
| 78 | 209 |
| 114 | 1017 |

1. While an application for a homestead should state out of whose property it is to be granted, and where an application by a wife fails so to state, the homestead will be invalid as against creditors of the husband, yet where a husband and wife live together on the land sought to be set apart, which belonged to him, and he had notice that his wife had applied to have it set apart, and made no objection thereto, the grant of the homestead bound him and those claiming under him as heirs.

2. Although the husband may have died, yet where he left surviving him his wife and several children, one of whom was still a minor, the homestead estate still existed; and on the application of the wife on behalf of herself and her minor child, the judge of the superior court could grant an order for the sale of the property and reinvestment of the proceeds. A sale effected under such an order would convey to the purchaser the title, divested of any claims which the heirs at law of the husband might have upon the property.

v 78-14

(a) Prior to the adoption of the constitution of 1877, this court held that there could be no alienation of the homestead property, even with the approval by the ordinary; but since its adoption, such power has been given, upon approval of the judge of the superior court.

October 26, 1886.

Homestead. Husband and Wife. Constitutional Law. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. March Term, 1886.

Reported in the decision.

L. W. THOMAS; C. J. SIMMONS, for plaintiffs in error.

JOHN COLLIER; W. H. HULSEY, for defendants.

BLANDFORD, Justice.

Philip McIntyre was the owner of a tract of land in or near Atlanta. His wife, Milly McIntyre, in 1875, made application to have the same set apart as a homestead to herself and children of her and Philip, on the ground that her husband refused so to do; but in the application for homestead, there was no allegation that the land belonged to her husband. The homestead was allowed by the ordinary. Philip lived with his wife and children on the land when the surveyor entered and platted the land under the order of the ordinary, and had notice of the wife's application. The husband died in 1883. After his death, all of his children, who had become of age, except Philip. jr. (who is now a minor), conveyed their interest in their father's estate to H. Linch, to secure him in the payment of a debt which they owed him. Philip McIntyre owed no debts when the homestead was applied for by his wife, nor at his death. In 1884, Milly McIntyre applied to the judge of the superior court of Fulton county, wherein the land is located, for leave to sell the same, making Philip McIntyre, jr., the only beneficiary of the

homestead, a party defendant, the other or former bene-
ficiaries having attained their majority.    The court ap-
pointed a guardian *ad litem* for the minor, who appeared
and answered the application; and an order was granted
by the judge of the superior court, authorizing a sale of
the land.    It was sold and purchased by Thomas Donald-
son, one of the defendants in error, for two thousand dol-
lars, a fair price; fifteen hundred dollars of this sum was
invested in another piece of land, and five hundred dollars
divided between her children.    The heirs at law of Philip
McIntyre, deceased, preferred their bill in equity against
Thomas Donaldson, praying that the conveyance to him
of the land embraced in the homestead estate be set aside,
and that the land be decreed to be theirs.    H Linch, by
cross-bill, intervened, and claimed that four-sixths of the
land belonged to him by virtue of the conveyance by the
heirs at law of Philip McIntyre to him.    He prayed that
his claim against them, on account of their indebtedness
to him, be decreed to be paid him out of the land in con-
troversy.    The case, as thus made by the parties, was left
to the final decision and determination of the presiding
judge without a jury, and he held and decided that Thomas.
Donaldson acquired a good title to this land by his pur-
chase.    To this decision and decree the heirs at law of
Philip McIntyre, deceased, and H. Linch excepted, and
error is alleged thereon.    These are the main facts in the
case, and all that are necessary to reach a proper adjudi-
cation of it.

1. The first question made by the plaintiff in error is,
that the homestead allowed by the ordinary to Milly
McIntyre, the wife of Philip McIntyre, was void, because
the application did not state out of whose property the
homestead was to be taken, and several decisions of this
court were cited and read to sustain this view; but it must
be noted that in all of those decisions, and every one that
has been rendered by this court, the decision turned upon
the fact that there were creditors, and the decision was

that the same was void because of the failure to give them notice, in the application, out of whose property, whether that of the wife herself or that of the husband, the homestead was to be allowed, and without this, it was not a sufficient notice to creditors to put them on notice to contest with the applicant her right to the homestead. In this case, there are no creditors interested. The husband alone was interested, and he had notice of the wife's application, and also that it was his property she was seeking to have set apart as a homestead. He made no objection before the ordinary, which, if he had done so, would have defeated the application. It will be inferred from this that the husband not only acquiesced, but consented to the allowance by the ordinary of the homestead out of his property. This action or non-action of his bound him, and consequently bound all others claiming under, through or by him. So we think that the homestead was good as to the husband and was valid ; and what we say here does not in any manner contravene or collide with any decision that has been rendered by this court heretofore.

2. The next point insisted upon is that, as the chancellor granted the order of sale after the death of Philip McIntyre, the husband, he had no jurisdiction to do so, and that the order was void. If the homestead was properly allowed, and we have so held, the same did not terminate with the death of the husband, but continued so long as there were any beneficiaries ; and when the order was applied for and granted, Milly McIntyre, the wife, and Philip, jr., a minor, were still beneficiaries, and the homestead estate existed as set apart under the constitution of 1868. By the constitution of 1877 (code, §5218), it is expressly proved that "parties who have taken a homestead of realty under the constitution of 1868 shall have the right to sell said homestead and reinvest the same by order of the judge of the superior courts of this State." Art IX. section IX. par. I. By this clause, express authority was granted to Mrs. Milly McIntyre, in behalf of her-

self and her minor son, to sell this real estate by the order of the judge of the superior court. This order was granted and the sale of the realty effected; and this being done, we are of the opinion that the purchaser acquired the title divested of any claims which the heirs at law might have upon the property. If Philip McIntyre, the father and ancestor, could have been divested of his title had he been in life, which we think is unquestionable, his heirs at law and those who claim through them occupy no better position than he did. Before the adoption of the constitution of 1877, this court held that there could be no alienation of the homestead property, even by the approval of the ordinary, but since its adoption, there is such power given, upon approval of the judge of the superior court.

After looking through the whole case as to pleadings and evidence, we are satisfied that the court below committed no error in the judgment and decree which he rendered in this case. So the judgment is affirmed.