### DEYTON *et al.* *vs.* BELL.*

1. Under the act of 1868, a homestead could be taken in the property of her deceased husband by a widow, as the head of a family consisting of herself and minor children.   It was not necessary to set out in the application therefor (in this case made in 1871) that the deceased husband owed debts, or to show this by proof; and the fact of existence or non-existence of debts was, therefore, not a jurisdictional fact.

((*a*) Where the fact that the husband owed no debts did not appear until application was made by the widow to the judge of the superior court for leave to sell the homestead, the purchaser of the land under that application was not thereby put on notice that the judgment setting apart the homestead was void, since the judgment was not void, as above stated, but at most was only erroneous; and where a court, having jurisdiction of the person and subject-matter, renders a judgment, it is valid and binding on the parties, however erroneous, until set aside, and cannot be attacked in a collateral proceeding.

2. Where the head of a family applies for leave to sell a homestead, it is necessary for his wife, if he have one, to join in the application. In case the applicant is a widow, who is the head of a family, she can make the application without joining her children therein; but if the application be by a trustee or guardian for minors, to whom as such the homestead has been set apart, it is necessary to make the children parties.

(*a*) But in this case it seems that the children were parties.   The application of the widow was expressly for the benefit of herself and children, and was expressly stated to be because of the necessities of them all; and a reinvestment was asked for the benefit of them all.   If they were parties plaintiff, no service on them was necessary.   In fact, no service on them was made, but the court appointed a guardian *ad litem* for them, who assented to and recommended the sale.

(*b*) The fact that the guardian did not accept his appointment as such until after the order for the sale was granted, was an irregularity which was cured by the facts that the sale was made after he did accept, that he assented to the sale and in his answer recommended

---

*This case was argued at the last term, and reargued at the present term by order of the court.

Deyton *et al. vs.* Bell.

it, that the receiver made a report to the judge who granted the order of sale, and that the judge confirmed the sale.

3. This court is one for the correction of errors of law, and its duty is to decide the law, however hard it may bear upon the parties. Hence it cannot listen to appeals in behalf of minor children who may have been wronged, but without violation of law, which can be redressed here. But numerous cases have come before this court in which it was apparent that the rights of minors were sadly neglected. Attention of the ordinaries and chancellors of the State is called to this fact, and they are urged, when applications are made to them to sanction a change in the property of minors, to be most careful in looking after the rights of such minors. The duty is especially urged upon chancellors to examine closely all petitions for the sale and reinvestment of trust and homestead property.

January 21, 1889.

Homestead. Ordinaries. · Jurisdiction.. Judgments Widows. Minors. Parties. Before Judge WELLBORN. White superior court. October term, 1887.

Candas Hood and others brought an action of ejectment against W. B. Bell and John R. Glenn for parts of lots of land numbers thirty-four, thirty-five and thirty-nine in the second district of originally Habersham, now White, county, known as the Dr. West place, containing 200 acres, more or less ; the boundaries of the tract being set out in the declaration. The defendants pleaded not guilty.

On the trial, it was shown that the father of the plaintiffs, S. P. Deyton, purchased the land and their mother took possession of it a few months after his death ; that he left six minor children, three of whom (the plaintiffs), with their mother, were living at the time of the trial ;. that their father paid $1,900 for the land, and $400 was all their mother got for it, it being somewhat dilapidated when she went out of possesssion, and the defendant had very much improved it ; and that their father owed nothing at the time of his death.

The defendant set up title under the following papers :

(1) A petition of Elizabeth J. Deyton, wife of S. P. Deyton and mother of plaintiffs, to the ordinary of Dawson county, for the setting apart of a homestead in " lots of land and parts of numbers thirty-four, thirty-five and thirty-nine, second district " of White county, containing 250 acres, more or less; wherein petitioner asked for an order to the county surveyor of White county, or some other surveyor, requiring him to lay off a homestead for applicant, value and make a plat of the same and return it to the office of the ordinary of Dawson county. The petition set forth that Mrs. Deyton was the head of a family, but did not mention of whom the family consisted. Attached to it in the record is what purports to be a plat of the homestead, accompanied by a return of the surveyor, giving a description of the property surveyed and a valuation of the lands set apart; also an approval by the ordinary and an order for the record of the homestead papers. No list of creditors of the husband of the applicant accompanies the petition.

(2) A petition of Mrs. Deyton to the judge of the superior court of White county for leave to sell the homestead, setting forth that petitioner is the head of a family of minor children and the widow of S. P. Deyton, against whose estate there were no debts when he died; that she had had homestead set apart to her, describing it as a farm in White county on which petitioner now resides, and as parts of lots of land numbers thirty-four, thirty-five and thirty-eight in the second district of originally Habersham, now White, county, known as the Dr. West place, containing 200 acres, more or less; that the land is poor, requiring a great deal of improvement, etc.; that the family consists of petitioner and four minor children, two girls and two boys; and that she asks for leave to sell at private sale, the proceeds to be placed in the hands of the clerk of the superior court

for reinvestment. The petition is dated March 29, 1879. On April 4, thereafter, the judge appointed a guardian *ad litem* for the children, and ordered that he signify his acceptance in writing and join in the prayer of the petition, if in his opinion it was for the best interest of the minors. On the same day, it was ordered that the prayer of the petitioner be granted; that the clerk of the superior court be appointed receiver; that the sale take place only by his approval; that he take charge of the proceeds of the sale and reinvest them in other lands, looking to the interest of the *cestuis que trust;* and after the sale, that Elizabeth Deyton execute good fee simple title to the purchaser, and the receiver make a full report in writing to the next term of the superior court. On April 10, the guardian *ad litem* accepted in writing his appointment and joined in the prayer of the petition.

(3) A deed, bearing date April 15, 1879, from Mrs. Deyton to Bell to the land set apart as a homestead, more particularly describing it as lying in the second district of originally Habersham, now White, county, known as the Dr. West place, being part of lots numbers thirty-four, thirty-five and thirty-eight, containing 200 acres, more or less; the consideration being named as $400. The deed is accompanied by the written approval of the receiver and the guardian *ad litem.*

The above statement, taken in connection with the decision, is a sufficient report of the case.

C. H. Sutton, W. T. Crane, M. L. Smith and A. F. Underwood & Son, for plaintiffs.

H. H. Perry, Wier Boyd, W. R. Williams, J. J. Kimsey and Harrison & Peeples, for defendant.

Simmons, Justice.

S. P. Deyton died in the early part of 1871, seized

and possessed of 200 acres of land in the county of White. At the time of his death he owed no debts. He left a widow and six minor children. In August, 1871, the widow applied, as the head of a family, for homestead and exemption; which were set apart to her by the ordinary. She seems to have resided upon the homestead from the time it was set apart in 1871 until 1879, when she filed her petition to the judge of the superior court of said county, for leave to sell said land and reinvest the proceeds in other land. In this petition she represented her family to consist of herself and four minor children, and that it was impossible for her and her children to realize a support from the land; that it was very poor, and was too large and unwieldy for the use and support of the petitioner and her family. She also represented that there were no liens upon the homestead, and no judgment creditors.

On the 4th of April, 1879, the judge appointed Isaac Oakes guardian *ad litem* of the minor children, and required him to join in the prayer of the petitioner for the sale of the land, if in his opinion it was for the best interests of said minors. On the same day, the judge granted the order for the sale of the land, and ordered that J. P. Osborn, clerk of the superior court, be appointed receiver in the matter, and that the sale of the homestead property take place only by his approval as to the price and terms of the sale; and that the receiver take charge of the proceeds of the sale and reinvest the same in other lands, and for the same use and under the same limitations that the homestead property was held, looking to the interests of the *cestuis que trust* in purchasing other lands in lieu of the homestead.

On April 10th, after this order authorizing the sale, Oakes consented to the sale as guardian *ad litem* of the

minor children, and joined in the prayer of the petition
for the sale of the homestead.   On April 15th, the land
was sold, and a conveyance made by the widow to Wil-
liam B. Bell   This deed from the widow to Bell had
the approval thereon of Oakes, the guardian *ad litem*,
and Osborn, the receiver.   Osborn made a report to the
chancellor, in which he stated that the land had been
sold to Bell for $400, that he had approved it as receiver,
and that Oakes, the guardian *ad litem*, had also approved
it, and that he had reinvested the $400 in other lands
for the same uses.   This report was approved by the
chancellor May 19, 1880.   The land which was set apart
to the widow and children as a homestead by the ordi-
nary in 1871, was valued at $1,900.   It was sold under
the order of the court in 1879 for $400.

Prior to March, 1886, three of the children who were
minors at the time the homestead was set apart, had
died, and at the March term, 1886, of White superior
court, Candas Hood, formerly Deyton, and Samuel N.
and Julius L. Deyton, children of S. P. Deyton, brought
suit in ejectment against W. B. Bell and J. R. Glenn for
the tract of land which had been set apart as a home-
stead, and of which their father had died seized and
possessed.   Upon the trial of the case, these facts and
others which will be shown by the official report were
submitted to the court and jury, and under the charge
of the court, the jury returned a verdict for the defend-
ants.   The plaintiffs filed their bill of exceptions to the
rulings and charge of the court, alleging error in several
particulars.   Among the errors alleged were the follow-
ing : Because the court refused to charge, (1) that a
widow cannot, when there are no debts, take homestead
in property of her deceased husband, covering the in-
terest of her minor children in the estate; (2) if the
homestead was void, the order of the chancellor ordering

it sold and the sale under such order are void; (3) if the minor heirs were not represented before the chancellor, when the order of sale was passed, then they are not estopped thereby from recovery. The court declined to give these requests; and charged that the widow, as head of a family, had the right to take out the homestead upon the husband's estate; and that if the children were represented before the chancellor by a guardian *ad litem* when the court granted the order for the sale of the homestead, they were bound by the action of the court.

This case was argued before us at the last term of the court, and at the present term was reargued at our request. The main point insisted upon in both arguments by the plaintiff in error was, that the homestead set apart to the widow by the ordinary in 1871 was void, because there were no debts owing by her husband at the time of his death, and therefore there was no necessity for the setting apart of a homestead; that the estate descended to the widow and the children under the statute of distribution; that the fact that there were no debts was a jurisdictional fact, and there being none, the ordinary had no jurisdiction to set apart a homestead for the widow and her children. The decision of this case, therefore, depends upon the question of whether the ordinary had jurisdiction to set apart this homestead, on the state of facts disclosed in the record.

1. The act of 1868 confers jurisdiction upon the ordinaries of the several counties of this State in the matter of setting apart homestead and exemption to the heads of families. It further declares that each head of a family shall be entitled to have a homestead set apart. This court, in numerous cases, has decided that a widow who has minor children is the head of a family, and

is entitled to have a homestead set apart to her. The act further prescribes what shall be set out in the petition for homestead. It declares that the applicant shall make out a schedule containing a minute and accurate description of the real and personal property claimed to be exempt, and shall hand it to the ordinary of the county in which the applicant resides, and that he shall apply to the ordinary for an order to the county surveyor to lay off his homestead, and to make a plat of the same, which order the ordinary shall issue at once and give to the applicant. Code, §2003. This was all that was required of the applicant at the time this homestead was set apart. We have examined the petition of the widow made to the ordinary in this case, in which she shows that she was the head of a family, and that her husband was seized and possessed of certain lands and personal property, which she, as the head of the family, desired to have laid off and set apart to her as a homestead and exemption; that the land did not exceed in value $2,000 in specie, and that the personal property (of which a schedule was attached) did not exceed $1,000 in specie. These are the amounts which the law allowed to be set apart, at the time this application was made. This petition, therefore, alleged all the facts required by law at that time to give the ordinary jurisdiction of the case. The law does not require the applicant for homestead to allege in the petition, or to show by proof, whether there are any debts against him or not, and in this case the widow was not required to allege or prove that her husband owed debts. The fact that there were or were not debts was, therefore, not a jurisdictional fact. If the jurisdiction of the ordinary had depended upon the fact of whether there were debts or not, the legislature certainly would have prescribed that the fact should be set out in the peti-

tion. The legislature not having done so, and having prescribed other facts to be alleged in the petition, we conclude that the jurisdiction of the ordinary in this case did not depend upon the fact that the husband owed debts; and we hold that that fact is not a jurisdictional one. If the fact that the husband owed no debts at the time of his death had been shown to the ordinary, taken in connection with the further fact that the land did not belong to the widow in her own right, but to her and her children, it is probable that he would not have granted the order setting apart this homestead and exemption; because in reality there would have been no necessity for a homestead in such a case, and because, under the statute of distribution, the property descended to the widow and children upon the death of the husband and father.

The fact of there being no debts, however, was not shown to the ordinary when this judgment was obtained, and it appears for the first time in her application to the judge, in 1880, to sell this land. In that application, she alleges that her husband owed no debts at the time of his death.

It was contended that although this fact was not known until the application to the judge of the superior court was made, yet the fact having been shown in that application, Bell, the purchaser of the land, was thereby put on notice that the judgment setting apart the homestead was void. We think we have shown that the judgment was not void for this reason. The judgment at most could only be erroneous. Where a court has jurisdiction of the person and the subject-matter, and renders a judgment, it is valid and binding on the parties, however erroneous it may be, until set aside; and it cannot be attacked in a collateral proceeding. *Mayer vs. Hover,* last term, 81 *Ga.* 308. I Herman on Estoppel,

§366.   In this case we have shown that the ordinary had jurisdiction, both of the subject-matter and the parties.   Jurisdiction to grant the homestead and exemption was conferred upon him by law; and the law also gave him jurisdiction of the parties in this case.   Moreover, the law allowed the widow, who had minor children, to apply for a homestead and exemption out of the property of her husband.   When the children subsequently sued Bell for the land set apart as a homestead, Bell sought to defend his title by showing this judgment of the ordinary setting apart the homestead, and the judgment of the judge of the superior court allowing the widow to sell the same to him.   The judgment of the ordinary was attacked, and the court overruled the objection thereto; and we think the court was right in its ruling for the reasons above given.

The case of *Madden vs. Jones*, 75 *Ga.* 680, relied upon by counsel for plaintiffs in error, differs in its facts from this case.   In that case, the husband died in 1862, before the passage of the homestead and exemption laws, and the property descended to his heirs under the statute of distribution, not qualified by the homestead and exemption law of 1868–69, which we have seen gave the widow the right to have a homestead and exemption set apart for herself and minor children out of the husband's estate, no adult heirs being interested therein.

2. But it is claimed by counsel for the plaintiffs in error that, although the judgment of the ordinary setting apart this homestead may not be void and cannot be attacked in this proceeding, yet Bell has no title, and the plaintiffs can recover because they are not bound by the order of the judge allowing this sale to Bell, they not having been proper parties thereto, no service having been made upon them as required by the code, §3263(a).   We do not think that where a home-

stead has been set apart to the head of a family, and he or she applies to the judge for permission to sell the same, it is necessary, under the law, to make the children parties thereto and to have them served. The law does not seem to require either that they should be parties, or that they should be served. It simply requires that whenever the debtor and his wife, if any, shall jointly desire the exempted property, whether real or personal, to be sold for reinvestment, an application must be made to the judge, etc. Code, §2025. It seems, therefore, that where the head of a family applies, it is necessary for his wife, if he has one, to join with him in the application. If he has no wife, he can make the application alone. In case the applicant should be a widow, who is the head of a family, she, under this statute, in our opinion, can make the application without joining her children therein. But if the homestead has been set apart to a trustee or guardian for minor children, and the trustee or guardian applies to the judge for leave to sell, the children are then required to be made parties. Code, §2025.

But even if the law were otherwise, we are inclined to think that in this case the children were parties to the proceeding. The petition of this widow applies for herself and her children, and she states therein the necessity for selling the homestead, that "the land was poor and the farm had run down," that she and her children "could not make a living on it," that she and her children "would suffer for food and clothing unless she were permitted to sell the land"; and she prays that a receiver be appointed to sell the land and purchase a farm better adapted to her use and her said children's use, etc. If they were parties plaintiff, of course no service on them was necessary. Besides, the court appointed a guardian *ad litem* for them, who

joined in this petition for the sale of the land.    We think, therefore, that the court below in the present case was right 'in its ruling on this question.    *Linch vs. McIntyre*, 78 *Ga.* 209.

It was urged in the argument that the guardian *ad litem* did not accept until several days after the order for the sale was granted, and that therefore his action was void and not binding on the minors.    The record shows that he did not accept the appointment of guardian *ad litem* until after the order of the sale was granted.    The record also shows that the sale was made after he did accept, and that he assented to the sale, and in his answer recommended it.    The record also shows that the receiver made a report to the judge who granted the order of sale, and that the judge confirmed the sale. The fact that the guardian did not accept till after the order was granted, was an irregularity which we think was cured by the subsequent order confirming the sale.

3. The record in this case shows that in 1871, when this homestead was set apart, the lands set apart were valued at $1,900, and that in 1880, when sold under the direction of the judge, they only brought $400.    A strong appeal was made to us by counsel for these children, on this ground.    He argued that the children had been virtually deprived of their patrimony, in the first place by the judgment of the ordinary, and in the second place by the judgment of the superior court, made without their consent and approbation, under which the land was sold for a song; and it was contended that if the purchasers were allowed to hold it, they would be greatly wronged.    The appeal was, in effect, that we should strain the law in order that the children might obtain their rights.    This appeal was made to the wrong court.    This is a court for the correction of errors of law committed by inferior courts, and it is our

duty to decide the law, however hard it may bear upon the parties.    When the forms of law in this class of cases have been complied with, the judgments of the ordinary and the judge of the superior court are binding upon the children.    We have no discretion in the matter.    But we will transmit this appeal, made to us in behalf of innocent minor children, to the ordinaries and chancellors of this State, who have a discretion in such matters, and whose duty, under the law and under their oaths, is to look after the interests of the minor children.

This is not the first case that has been before us in which appeals of this sort have been made.  We wish to impress upon the ordinaries and chancellors of the State that when they deal with the estates of minor children, they should be particular in looking after their rights. Numerous cases come before us in which it is apparent that the rights of minors have been sadly neglected. The ordinaries and chancellors are the guardians and protectors of the minor children of the State ; and when applications are made to them to sanction a change in the property of minors, bequeathed to them by their fathers, and to which they are entitled under the law, we beg them, for the sake of the innocent and unprotected, to look into these matters as if they were their own children ; and we especially urge upon chancellors to examine closely all petitions for the sale and reinvestment of trust property and of homestead property. It is so easy for a trustee to set out in his petition the facts which in his judgment will authorize the sale of trust property bequeathed to minors, and it is just as easy for him to get a friend, who perhaps may be interested with him, appointed as guardian *ad litem* for the children, and have him consent on their behalf to the sale.    In such cases, the chancellor, before he grants the order, should be well satisfied, not only from the answer of the guardian

*ad litem*, but from personal scrutiny himself, that the property should be sold. It should not be merely a *pro forma* matter on his part, but he should examine into the facts, and should only grant the order for sale when he would do so if his own children were interested. Cases come before us every year in which, under the forms of law, minors have been virtually robbed of their estates, and they have no redress; for we are compelled to decide that where a court has jurisdiction of the subject-matter and the parties, the judgment of that court is binding and conclusive on the parties, and cannot be attacked and set aside in a collateral proceeding. For the sake of the women and children of the State, we do hope that ordinaries and chancellors will be more particular in regard to the management of the estates of their *cestuis que trust*.

Judgment affirmed.