## RICHARDS *et al.* *v.* EAST TENNESSEE, VIRGINIA AND GEORGIA RAILWAY COMPANY.

1. The jurisdiction of equity over the estates of wards of chancery is broad, comprehensive, and plenary.

2. When one holds title to realty in trust for the benefit of a mother and her minor children during the life of the mother, but is not clothed with the title to the legal fee in remainder which vests in the children, he

may apply to a court of equity for a sale of the entire property, including the legal as well as the equitable estate, the purpose of the application being for the benefit of the children as well as the mother. The moment such an ex parte petition comes before the chancellor and discloses the fact that the legal as well as equitable estate of infants is involved, they become his wards, and the case is one concerning "an estate of the wards of chancery;" and accordingly the chancellor has jurisdiction to grant in term an order to sell the entire property, the minors being properly made parties and represented before him.

3. The petition of the trustee for the sale of the premises in dispute having been made and passed upon prior to the act of 1876, requiring personal service on minors, the appointment of a guardian ad litem for them, and his appearance and answer to the petition, were sufficient to give the court jurisdiction of their rights.

4. Where such a trustee petitions for the sale of the entire property embraced in the conveyance to him, for the purpose of supplying the immediate necessities of all the beneficiaries, including the children, and of making permanent investments for their benefit, an order granted to sell the property in accordance with the petition in effect directs an absolute sale of the entire estate, both legal and equitable. This is true notwithstanding the fact that the order of the judge appointing a guardian ad litem states the case as an "application to sell trust property."

5. Since the first code went into effect on the 1st of January, 1863, it has never been necessary, in order to give the chancellor jurisdiction to direct a sale of the legal and equitable estate of minors in the same property, that a regular proceeding in equity be instituted; but such a sale may be ordered by the judge without a jury, upon an ex parte petition, and at the term of the court when the petition is filed or presented.

(a) In the absence of any legislative provision to the contrary, it would seem that equity has inherent jurisdiction to order a sale of the legal estate of minors for reinvestment, whenever to the minors' interest. Be this as it may, the present case is distinguishable from one where the sole purpose is to sell such an estate for reinvestment. This is so because the petition for sale now under consideration involved equitable rights over which the superior courts of this State clearly had jurisdiction.

6. Where such a petition had entered thereon, "January adjourned term, 1871," and the order of sale had entered on it at the place of the judge's signature, "January adjourned term, May 12th, 1871," and it appeared that the judge was actually on that day holding a regular session of such adjourned term, this was sufficient to authorize the presumption that the order in question was granted in open court, during its regular session in the transaction of term business, and was therefore a proceeding in term and not at chambers. The facts, that the petition was not filed, that the case was not entered on the regular docket of causes for trial, that no process was attached to the petition, and that the order of the sale directed a record of the proceedings on the minutes, as is usually the case when such orders are granted at chambers, were not sufficient to overcome this presumption; especially in view of the principle that the court should adopt that construction which treats the order as completely legal, and not as partially illegal and to that extent void.

7. Even if the proceedings to sell the property were defective on account of the omissions to file the petition, attach process, and docket the case, these were mere irregularities which did not render void the judgment of a court that had jurisdiction over the persons and subject-matter of the suit; especially where the interests of innocent purchasers are involved, with whose rights equity is always loath to interfere.

8. Where one for value purchases land and thereby acquires all title thereto owned by a mother who held the same under her father, and whose equitable title thereto was superior to any equity which her minor children had therein at the time of the purchase, the vendee's title can not be defeated by a decree in favor of the children, rendered upon a suit subsequently brought in their interest by the mother against the estate of her father for the recovery of the premises; the purchaser from the mother not being a party to this suit, and therefore not bound by the decree.

SIMMONS, C. J., dissenting. 1. A deed which conveyed to a named trustee, for a married woman and her present and any future children of hers, free from the debts, contracts, and control of her present or any future husband, and, "after the death of the mother, to her children free and relieved of the trust," conveyed to the mother and her children an equitable estate as joint usees, and to the children after the death of the mother a legal estate in remainder. This legal remainder vested in the children living at the date of the deed, subject only to open and take in any child or children born thereafter.

2. The trust estate therefore, so far as the children were concerned, was confined to the estate in common, which was held by them as joint usees with their mother during her life. Consequently, the estate of the trustee was less than the fee. It did not include the remainder.

3. A court of equity in this State, in the year 1871, had no inherent power, either in term or at chambers, to order or decree the sale of the legal estate of infants for the purpose of reinvestment. Where, therefore, in 1871, upon the application of the trustee described in the first headnote, for leave to sell the trust estate of the mother and children and also the legal estate of the latter, as described above, a guardian ad litem was appointed and consented to the order, and the court thereupon ordered the sale for reinvestment, the order was void as to the legal estate, and, upon the death of the mother, the children had a right to recover the same from those in possession under the sale.

(a) The fact that the court had the power to order the sale of the trust property did not give it the power to order the sale of the legal estate, although the infants had a joint interest in the former, and although the petition prayed for both.

(b) The fact that it was difficult to sell one without the other would not confer the power upon the court, nor would the fact that the mother and children were suffering for want of means for their support. The court only having power to order the sale of the trust property, the above recited facts could not possibly give it power to order the sale of the legal estate for the purpose of reinvestment.

Argued June 18, 1898. — Decided March 4, 1899.

Complaint for land. Before Judge Henry. Floyd superior court. September 3, 1897.

*T. W. Alexander* and *Hooper Alexander*, for plaintiffs.
*Shumate & Maddox* and *C. N. Featherston*, for defendant.

LEWIS, J. On March 30, 1890, Virginia Henderson, Pauline Floyd, Charles Ralls, and Mary Ellis, all and the sole surviving children of Sarah A. C. Ralls, who died in 1888, sued the railway company for a tract of land in the Coosa division of Rome, known as those parts of city lots 156 and 157 lying back of a line parallel with and 120 feet from the front of said lots on formerly South street, but now First avenue, together with the improvements thereon, and for rents etc. since January 1, 1888. There was a verdict for the plaintiffs for the premises in dispute, and rents at the rate of $75 per month; whereupon defendant moved for a new trial, which was granted, and the plaintiffs excepted. It appears from the record, that the legal title to the premises was originally in James C. Branch, of Clarke county, who was the father of Mrs. Sarah Ann C. Ralls, and that the latter, with her husband, was put in possession of the land by Branch about the year 1849. They remained in possession until 1869; or at least, while it appears that during a portion of the period between 1849 and 1869 they were not actually living on the premises, it does not appear that any one during this whole time had any control or dominion over the land except Sarah Ann C. Ralls, or her husband. During such possession valuable improvements were placed by them upon the land. In 1869 Mrs. Sarah Ann C. Ralls brought her petition, beginning: "Georgia, Floyd County. To the Honorable R. D. Harvey, judge of the superior courts of Rome circuit, and exercising jurisdiction in chancery." The recitals in the petition were in substance as follows: that petitioner is the daughter of James C. Branch; that her husband for three years, from depression and weakness of mind, had been wholly unable to attend to any business; that J. C. Branch had held in trust for her separate use lots 156 and 157 in Rome, which he had given her in the year 185—, and which she had resided upon and improved ever since as her separate estate; that her father,

said Branch, who had held the title to said property, had died, and she had no trustee. In order that the trust might not fail, she prayed that some proper person be appointed trustee, with power to hold the property for her sole and separate use; and having full confidence in Jones, she prayed that he be so appointed "and clothed with the legal title" to the property. She further alleged that it was for the best interests of herself and her estate that the property be sold, a cheaper residence bought, and so much of the surplus as needed applied to buy necessaries for herself and children. Therefore, that the trustee be so empowered to sell and reinvest, etc. This was signed by solicitors for complainant. No entry of filing appeared upon the petition. Jones consented to accept the trust, July 15, 1869; and on July 20, 1869, an order was granted by Judge Kirby, appointing him trustee, and empowering him to sell, reinvest, etc., as prayed. Under this order Jones as trustee sold to Wadsworth a small triangle off of the rear of the lot for $175. This portion of the property will hereinafter be designated as the "Wadsworth triangle." It passed from Wadsworth, by successive conveyances, to the defendant.

Later on Mrs. Ralls, for herself and as next friend and natural guardian of her children, not naming them, brought a bill in Clarke superior court, alleging that she was a daughter of James C. Branch, deceased, who had purchased of Shorter lots 157 and 158 in the Coosa division of Rome, Ga.; that Branch had repeatedly expressed his purpose to convey in trust to her, for the benefit of herself and children, this property according to the terms of the trust deed executed by him to one Black, a copy of which was annexed; that the portion of the purchase-money paid by Branch for the property was her own, previously advanced her by him as a part of her share of his estate; that she and her children had been in peaceable and uninterrupted possession of the property for nearly twenty years previously to the death of Branch, had paid the taxes and made various improvements thereon during all that time; that Branch died testate, leaving various persons named as legatees; that the property did not form part of the estate of Branch, nor did the title to it vest in his legatees and heirs, but was in complainant

and her children subject only to the trust as stated in the deed to Black. The prayer was, that the title be vested in Jones as trustee of herself and her children, subject only to the conditions in that deed. The legatees and heirs of Branch and the executrix of his will were made parties defendant. They jointly answered the bill, admitting the allegations as true. At the February term, 1871, there was a verdict, that in 1851 Branch purchased of Shorter and gave to Mrs. Ralls the land in question; that she had since been in possession thereof; that the land had been paid for by Branch in part with her money which he had before given her; that he had intended to convey the land to her and her children under the same terms and limitations contained in the trust deed to Black; that she had paid the taxes and made improvements on the faith of that understanding; that the title to said property vest in the said Sarah Ann C. Ralls and her children, and that the executrix of Branch do execute to Jones, "in trust for the benefit of the said Sarah Ann C. Ralls and her children," a deed to the land under the same terms and limitations as are contained in the Black deed. The decree followed the verdict. The deed made in pursuance of this decree by the executrix of Branch was dated February 14, 1871, and conveyed the land to Jones, "as trustee for said Sarah Ann C. Ralls and her children, and successors of said trustee, . . to have and to hold unto said B. F. Jones as trustee as aforesaid, and his successors in trust, forever in fee simple, for the sole and separate use of the said Sarah Ann C. Ralls and her present children and any future child or children of hers, free from all debts etc. of her present husband as well as of any future husband she may ever have, and after the death of said Sarah Ann C., to her children free from and relieved of the trust." This conveyance followed the Black deed, the latter containing a warranty to Black as trustee, as aforesaid, to be by him held for the purpose and use hereinbefore named.

After this decree a supplementary petition to the one first above mentioned was brought, of which the following is the substance so far as is material: The petition began, "Georgia, Floyd County. To the Honorable R. D. Harvey, judge of the

superior courts of Rome circuit, and exercising jurisdiction in chancery." The complainants or petitioners were Jones, trustee of Mrs. Ralls and her children, who were minors, and Mrs. Ralls. The allegations were, that since the foregoing petition and order was granted, petitioners, by a bill in chancery against the administratrix of said J. C. Branch and against the guardian of his minor children and heirs, in Clarke superior court, obtained the decree above mentioned, and a deed to the property in pursuance thereof; that it is still for the interest of the family of Mrs. Ralls and her children that the property should be sold and a farm or other home be bought, and, if a farm, stocked with part of the funds for the use of the family, upon which they can live and earn a support; that the house is very much decayed and will soon be worthless unless repaired, and petitioners are without means to repair it; that the family is destitute of means of support, that they are living in the house, have no income, and are in need now of daily food and raiment; that petitioner can sell a portion of the property to the Rome Hollow-Ware and Stove Foundry, by taking half of the purchase-money in the stock of that company, and believes that this will be a paying investment. The prayer was: "They pray your honor to authorize said sale and investment, and also to authorize and order the sale of the balance of said property, and the investment of the proceeds as hereinbefore prayed, and that so much of the proceeds as is needed be expended for such supplies as the family needs." The petition was signed by B. F. Jones as trustee, and by Sarah A. Ralls. Opposite these signatures appeared the words : "Jan'y adjourned term, 1871." No entry of filing appeared on this supplementary petition which was attached to the original petition, and in the backing of it the words, "July term, 1869," were changed to "Jan'y adjourned term, 1871."

The following orders and answer of guardian ad litem were read in evidence from the minutes of the court, to wit: "In the matter of B. F. Jones, trustee of Sarah Ann C. Ralls and children, which is an application for the sale of the trust property and investment of the proceeds thereof, ordered that H. D. Cothran be appointed guardian ad litem for the minor children

of Mrs. Ralls [naming them], and that he answer said application." This was dated May 10, 1871, and signed by R. D. Harvey as judge. The answer of Cothran as guardian ad litem stated, that he had read the petition and application, and found that the facts therein stated were true; that he was familiar with the conditions and circumstances of the family of Mrs. Ralls, and with the condition of the property; and that he concurred in the petition, and recommended that the prayer thereof be granted. The following order was passed by the court upon the application: "Upon hearing the foregoing petition and answer of the guardian ad litem, and upon examination of all the papers and copy-papers therein referred to, it is ordered by the court, that Jones, trustee, have leave to sell the portion of the property to the Rome Hollow-Ware & Stove Foundry and invest one half of the proceeds in the foundry, and that the balance of the money arising from the sale be expended in providing for the immediate necessities of Mrs. Ralls, in paying cost, etc., and that Jones, trustee, be authorized to make sale of the balance of the property and purchase a farm or other home with part of the money, stock the farm, if a farm, provide for and pay the necessary expenses of the family as they may rise from time to time, and that this petition and order and papers accompanying the same and the certified copies of the papers in the equity cause in Clarke superior court, etc., be entered on the minutes of the court, and that the petition and order of Judge Kirby be also entered nunc pro tunc." This was signed by R. D. Harvey as judge of the superior courts of the Rome circuit, "Jan'y adjourned term, May 12th, 1871." It was admitted that the minutes of Floyd superior court show that that court was in session at the January adjourned term, 1871, on the 10th, 11th, and 12th of May, 1871, and that on May 12, 1871, the court took a recess from May 12 to May 29, 1871; that the foregoing proceedings were recorded as of May 30, 1871, and that said adjourned term finally adjourned on June 7, 1871; also that the minutes of May 10, 11, and 12, made no reference to said proceedings. Under this last order the rest of the premises in dispute was sold, and defendant claimed under a purchaser at this sale.

It was contended by counsel for plaintiffs, (1) that the intention of the judge in ordering a sale of the property was to sell only a trust estate, and this was held by Jones in trust only during the lifetime of Mrs. Ralls.  (2) That if such was not his intention, the order as well as the sale thereunder was void in so far as it undertook to convey the fee in remainder that belonged to the children; the order being passed at chambers, and the court being without jurisdiction to grant the same.   On the other hand, it is claimed by the defendant, (1) that the order was not granted at chambers, but in term, and that the sale thereunder conveyed the legal title to the entire fee.   (2) That the evidence showed an outstanding title in the husband of Mrs. Ralls, by virtue of his marital rights, superior to any title set up by the plaintiffs, and that they could not recover in this action.    (3) That inasmuch as the plaintiffs went into possession of, and were enjoying the proceeds of the sale of some of the trust property (not including any of the land in dispute), they thereby ratified the sale of the entire estate, and were estopped from denying the validity of the order under which it was had at different times. (4) That even if plaintiffs were entitled to recover, their claim for rents and mesne profits should be offset by improvements placed upon the property by it and those under whom it claimed, which greatly enhanced the value of the property for rent, etc.   There were various grounds in the motion for a new trial, but the above will cover all the material questions of law involved.    Among the errors complained of in the motion for new trial was a charge of the court to the effect that the proceedings had in May, 1871, before Judge Harvey, by which leave was granted to Jones, trustee, to sell this property, did not authorize him to sell anything more than a life-estate.   It seems that the judge held, that while this order was granted in term and not at chambers, yet it was not the purpose of the order to authorize a sale of anything except the life-estate.

1. The jurisdiction of courts of equity over the persons and property of infants dates from a very early period in the history of these courts.   In its inception this jurisdiction belonged to the King of England, the same constituting a part of his

powers as parens patriæ to protect his subjects, and was trans-
ferred by him to the court of chancery.    This jurisdiction is
broad, comprehensive, and plenary.    In all suits or legal pro-
ceedings of whatever nature, in which the personal or property
rights of a minor are involved, the protective powers of a court
of chancery may be invoked whenever it becomes necessary to
fully protect such rights.    Should such proceedings be insti-
tuted and it should appear to the court that the infant is un-
represented by any one fully charged with the power and duty
of protecting his interests, it is the duty of the court to appoint
a guardian ad litem for the minor.    But the court's duty does
not end here.    The minor in such an action becomes a ward
of the court of chancery, and the chancellor himself is in legal
contemplation the infant's guardian.    He continues to look
after and protect the rights of the minor, and the appointed
representative is but a mere agency through which the
court is required to act in giving this protection.    To this
end the chancellor may compel the guardian to answer the
suit, and, whenever it should appear that it is to the interest
of the ward to resist the proceeding, he can compel the guard-
ian to take such steps as are necessary to have properly adjudi-
cated the rights of his ward.    He can, *sua sponte*, refuse to al-
low any admissions or concessions made by the guardian
against the interests of his ward; and whenever such guardian
is derelict in the performance of his duty, the court can dis-
charge him and appoint another in his stead.    In short, this
general supervisory power which a court of chancery can exer-
cise over the rights of a minor extends throughout the pro-
ceeding; and the plenary jurisdiction of a court of equity in
such matters can not now be questioned.    6 Am. & Eng. Enc.
L. 723 (12); 10 Enc. Pl. & Pr. 588 et seq., and authorities
cited; 10 Am. & Eng. Enc. L. 692 et seq.

2. It follows from the above principles, that whenever an
application is presented to the chancellor, seeking a sale or
other disposition of land in which minors have an interest,
either legal or equitable, they become wards of chancery.
Such was the nature of the petition in *Sharp* v. *Findley*, 71 *Ga.*
654.    On page 665 of that volume Chief Justice Jackson, de-

livering the opinion of the court, says, "The very minute this petition came before this chancellor and disclosed the fact that the land of infants was involved, his wards were before him, and the case was concerning 'an estate of the wards of chancery.'" In the case of *McGowan* v. *Lufburrow*, 82 *Ga.* 532, Justice Simmons (now Chief Justice), after citing approvingly the opinion of Chief Justice Jackson above quoted, says: "Here, as we have shown, was an application before the chancellor concerning the estate of infants. According to this decision, just as soon as the application was presented to him, they became his wards, or the wards of chancery. He thereby obtained power and jurisdiction over their persons and their property." In 10 Enc. Pl. & Pr. 589, the same principle is announced in the following words: "Whenever a suit is instituted in the court of chancery relative to the person or property of an infant, although he is not under any general guardian appointed by the court, he is treated as a ward of the court and as being under its special cognizance and protection." See also authorities cited, including the case of *Sharp* v. *Findley*, supra. It is contended by counsel for plaintiffs, that the deed executed under the decree of the superior court of Clarke county, on February 14, 1871, by the executrix of the estate of James C. Branch, conveyed the land in dispute to B. F. Jones as trustee for Sarah Ann C. Ralls and her present children and any future child or children of hers, during the lifetime of the said Sarah A. C. Ralls, and after her death the property passed to her children relieved of the trust; that under this deed the children, who are the plaintiffs in this case, took an equitable estate as joint usees with their mother during her life, and a legal estate in remainder in the fee, to take effect in possession at her death. Under the authority of *Franke* v. *Berkner*, 67 *Ga.* 264, we think this is a proper construction to place upon the terms of that deed. It might, however, with some degree of plausibility, be contended that it was the purpose of the deed above referred to, to convey not only an estate for life to the trustee, but also the entire fee during the lifetime of the life-tenant, Sarah Ann C. Ralls. The instrument conveys the property to Jones "as trustee for the said Sarah

Ann C. Ralls and her children, and successors of said trustee."
In the habendum clause the following words are used: "To
have and to hold unto the said B. F. Jones as trustee as afore-
said and his successors, in trust *forever in fee simple*, for the sole
and separate use of the said Sarah Ann C. Ralls and her pres-
ent children and any future child or children of hers." It is
true, the deed states that after the death of the said Sarah Ann
C. Ralls the property passes to her children free from and re-
lieved of the trust. We do not think there can be any ques-
tion that the grantor has the right to convey to the trustee the
fee-simple title and at the same time limit the duration of the
trusteeship. He could, for instance, have in this case clothed
the trustee with the *legal title to the fee* during the lifetime of
Mrs. Ralls, and at the same time have provided that at her
death the trust should cease and the fee should pass from the
trustee to the remaindermen. In fact, whether the convey-
ance limited the trust as to its duration or not, the law would
necessarily fix a limitation. In this case the trust would have
been at an end when the minors arrived at age, the mother be-
ing sui juris under the act of 1866. We can not conceive of a
case in which there could be no end to the exercise of such a
trust.

It might with some force be contended, therefore, that if the
words "in trust forever in fee simple," above quoted from the
deed, have any force or effect whatever, they clothed the trustee
with the legal title to the entire fee during the lifetime of Mrs.
Ralls. The words "in fee simple" do not occur in the deed
which was construed by the court in *Franke* v. *Berkner*, supra,
and this distinction might be drawn between that case and the
one now under consideration. We think, however, the *prin-
ciple* decided in that case, as above indicated, would constrain
us to hold that the words, "after the death of the said Sarah
Ann C. Ralls, free from and relieved of the trust," limit the
estate the trustee took and it did not include the legal re-
mainder. Such seems to be the idea of Chief Justice Bleck-
ley in the opinion rendered by him in *East Rome Town Co.* v.
*Cothran*, 81 *Ga.* 365 : "Where the conveyance limits the estate
to less than a fee, the trustee never has a fee; but where the

law passes the fee by executing the trust, the fee which was before in the trustee passes out of him into the beneficiary." This view seems to have been adopted by counsel for both parties, in the argument; and in the consideration of this case we will treat it as a correct construction of the instrument in question.

Assuming, therefore, that when the trustee made his application for the sale of this property he was not clothed with any title to the fee in remainder, it is nevertheless true that if the purpose of his application was to sell the entire fee, including the remainder which was vested in the minors, the moment the petition was presented to the chancellor he saw that the interests of these minors were involved, not only in the life-estate, but in the remainder, and from that time they became wards of chancery. As to what proceedings should be had in order to bring legally into operation the protective powers of a court of chancery in such a case, is a matter for legislative regulation. If no special procedure is provided by statute, it would seem that the rules governing the procedure in ordinary cases in equity would apply and should be followed. In this State we think that the statute not only recognizes the complete and plenary jurisdiction of chancery in such cases, but also clearly indicates the nature of the procedure that should be had. Civil Code, § 4863, declares: "All proceedings ex parte, or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery, may be presented to the court by petition only, and such other proceedings be had therein as the necessity of each cause shall demand." The following section provides that a court of equity is always open for such purpose, and the judge can, either in vacation or at chambers, receive and act upon such petitions. Section 4865 provides, among other things, that in an application for the sale of trust property where any person is interested besides the applicant, notice must be given to such person before the court can proceed. The following section, 4866, provides: "If minors are interested and they have no guardians, guardians ad litem must be appointed and notified before the cause proceeds." The proceeding in this case on which was based the order of

the judge, of May 12, 1871, was not only an effort to sell a trust estate in the property but, as we shall hereafter see, the entire fee, whether encumbered with the trust or not. It was presented to the court by the petition of the trustee and of the life-tenant, Sarah Ann C. Ralls. It involved not only a trust estate, but, minors being interested, not only as beneficiaries of that estate but also as remaindermen, it involved the estate of the wards of chancery. It was also a proceeding ex parte, or at least in the nature of such a proceeding; for the ostensible purpose of the petition was for the benefit of all concerned, and there was apparently no adverse interest to be considered in passing upon the application. The proceeding that was instituted, therefore, was literally and substantially in accord with the provisions of section 4863 of the Civil Code, above quoted, and it embraces the very subject-matter of chancery jurisdiction clearly contemplated and recognized by that section.

3. Minors were interested; they had no guardian; a guardian ad litem was appointed in compliance with the provisions of Civil Code, § 4866. This was before the act of 1876 which requires personal service on minors in all such cases. Before the passage of that act, an appointment of a guardian ad litem for a minor, and notification of him before the cause proceeded, was all that was required to have the interests of a minor properly represented in any cause in court. *Harvey* v. *Cubbedge*, 75 *Ga.* 792; *Adams* v. *Franklin*, 82 *Ga.* 168.

4. It is contended by counsel for plaintiffs, that when the judge granted the order of May 12, 1871, authorizing a sale of this property upon the supplemental petition of Jones, trustee, and Sarah A. C. Ralls, it was his purpose simply to authorize a sale of the trust estate and not a sale of the fee in remainder, and that in the light of the entire proceedings had this was the legal effect of the order. There can be no question that the purpose of the petition was to obtain authority to sell the entire fee to the property. There is nothing whatever in the petition to indicate a contrary purpose. The object of the petition was, first, to supply the immediate wants and necessities of the beneficiaries, among whom were included all the remaindermen; and, second, to invest the residue of the proceeds of

such sale in a farm or other permanent home for these benefi-
ciaries and remaindermen, upon which they could live and
earn a support.    Upon this application a guardian ad litem
was appointed, and in his answer he concurred in the petition,.
found the facts therein stated were true, and recommended
that the prayer thereof be granted.    The order granting the
sale had direct reference to the petition and answer, and granted
leave to sell the property and apply the proceeds of the sale
thereof, as prayed for.    Whenever one seeks to sell property
or negotiates for its sale, the presumption is that his purpose is
to convey an absolute estate, unless a less estate is expressly
mentioned and limited.    Civil Code, § 3083.    The only reason:
urged in support of the plaintiffs' contention is the construc-
tion they place upon the phraseology used by the judge in
granting the order appointing a guardian ad litem for the
minors.    That order is as follows:    "In the matter of B. F.
Jones, trustee for Sarah Ann C. Ralls and children, which is
an application for the sale of the trust property and investment
of the proceeds thereof, according to the prayer of the said peti-
tion.    It is ordered that H. D. Cothran be and he is hereby
appointed guardian ad litem for the minor children [naming
them] of the said Sarah Ann C. Ralls, and that he answer said
application."    It is insisted that, by virtue of the terms of this.
order, the judge regarded the application only as one for the
sale of such interest in the property as was covered by the
trust; that he therefore appointed a guardian to represent the
minors as to this interest; and that his purpose in granting the
order for the sale was only to sell the trust estate and not the
fee in remainder.

In the first place, we regard the words in the first part of
the order only as an effort on the part of the judge to state the
case.    He named one of the petitioners, and stated the case as.
an application for the sale of trust property.    If minors were
interested in a suit, praying not only for injunction but for
other substantial, equitable relief, and a court should appoint
a guardian to represent their interests, it would hardly be con-
tended that, simply because in his order appointing the guard-
ian he stated the case as an application for injunction, such

guardian would only be empowered to represent the interests of the minors in so far only as they were interested in the prayer for injunction, and could not represent their entire interests in the suit.　This guardian ad litem was appointed to represent the minors in the proceeding that was then before the court.　To determine what is the extent of their interest in such proceeding, one would naturally look to the petition itself, and not simply be content with what the judge had denominated the petition, in his order.　The two should be construed together; and so construed, we think there can be no question that the legal effect of this order was to clothe the guardian ad litem with full power and authority to represent the entire interests, legal and equitable, of these wards in chancery.　Besides, we think the construction given the words, "application for the sale of the trust property," is entirely unauthorized.　In the light of the nature of this petition and its object to sell the entire fee for the purpose of a reinvestment in a permanent home, to hold that the judge contemplated restricting the power of sale to the life-estate would simply be an absurdity and would be entirely at variance with the clear and unmistakable meaning of the final order that he passed in the case.　The terms, then, "trust property," as used in the order, meant simply a designation and identification of the particular thing involved.　He simply meant the land itself which was encumbered with the trust.

In the case of Headen v. Quillian, 92 Ga. 220, it appeared that a trust estate was granted by deed for the use of the wife of the grantor for her life, or widowhood, and after her death the property passed to her children.　In that case, the fee in remainder was a legal estate which vested in the children when the deed was executed; the trust only covered the life-estate of the wife.　The deed gave the trustee, with the consent of the life-tenant, power to sell "said trust estate."　It was held that this authorized a sale of the entire fee.　Chief Justice Bleckley, delivering the opinion of the court, on page 222 says: "There can be no rational doubt that by the terms 'said trust estate,' as an object of sale, the maker of the deed intended and understood the land itself which the deed conveyed.　.　.　To

hold that he contemplated restricting the power of sale to the estate for life would attribute to him a technical narrowness utterly strange to his thoughts and at complete variance with his real state of mind." The principle embodied in this decision, and in several others by this court to like effect, is embodied in Civil Code, § 3171. We dare say, there never was an instance where a trust deed or other instrument limited the estate which the trustee took for life with remainder over, and where the trustee applied for and obtained an order to sell and reinvest the proceeds, but that a sale of the entire fee, and not simply of the life-estate, was contemplated both by the application and by the order of sale. It is true, there are a number of cases decided by this court in which it has been held that such a sale conveyed only the life-estate and not the fee; but not in a single case that we are aware of has the decision of the court been based upon the idea that the purpose, either of the applicant or the judge, was to sell only such interest in the property as was encumbered with the trust. We think, therefore, the court below erred in his conclusion that the judge by his order of 1871 only intended to direct a sale of the trust or life-estate.

5. It is insisted for plaintiffs, that before jurisdiction exists to sell the legal estate of minors, there must be a regular proceeding in equity. To sustain this position the case of *Milledge* v. *Bryan*, 49 *Ga.* 397, is cited and relied upon. In that case the trust had ceased and the legal estate in the property had vested in the children. No interest in the land sought to be sold was encumbered with any trust whatever. It was simply held that the judge of the superior court had no jurisdiction to grant an order in chambers authorizing a sale of the whole estate, either to pay a debt or to raise money to educate the children. But Judge Trippe, in delivering the opinion in that case, from which counsel make the above quotation, expressly stated that the orders were passed by the judge in chambers several years before the code went into operation, and that the only authority that could be claimed for the power exercised by the judge was the act of the 20th of February, 1854. By reference to that act (Acts 1853–4, pp. 59, 60) it will be

seen that the judges of the superior courts are authorized at chambers, where all parties at interest are represented and consenting and where there is no question of fact in dispute, to appoint or remove trustees, and to order the sale or division of trust or other property or the investment of trust or other funds. This act was intended to meet the decision in the case of *Arrington* v. *Cherry*, 10 *Ga.* 429, where it was held that a judge at chambers has no power upon petition to order a sale of trust property. While the terms of the act do not seem to restrict the jurisdiction at chambers over trust property alone, but the words "other property" are used, yet this expression is so indefinite, general, and uncertain that the court having in view the evident object of the act limited its application in *Milledge* v. *Bryan* to trust estates alone. When the first code, however, went into effect on the first of January, 1863, the law on the subject was changed. Sections 4863, 4864, Civil Code, are not a codification of the act of 1854 or any other special statute that we are aware of. Section 4863 does not leave it uncertain as to what proceedings may be presented to the court by petition only, and which are not required to be brought by regular bill or petition in equity. It includes "all proceedings ex parte, or in the execution of the protective powers of chancery over trust estates, or the estates of the wards of chancery." In the act of 1854 no reference is had specially to any estate, except trust estates. In the case at bar the proceeding to sell the property in question was not only an ex parte one, but it related also to the trust estate, and, as heretofore shown, to the estates of the wards of chancery. It therefore embraces all three of the subjects contemplated in the above section of the code, while either one would have given the court jurisdiction under the form of procedure that was had. When the court, therefore, in *Milledge* v. *Bryan*, supra, called attention to the fact that the orders of the judge, in question, were several years before the code went into operation, it doubtless had in mind the change which the code had wrought in the old law; and hence this decision, if it has any bearing on this case, is really authority against the plaintiffs.

As an original proposition, speaking for myself, I would not

be prepared to hold that the judge in this case did not have jurisdiction to grant the order at chambers, authorizing the sale of this entire property including the legal estate in remainder. The Civil Code, § 4864, expressly declares that "The judge in vacation and at chambers may receive and act upon such petitions." In the cases of *Sharp* v. *Findley*, 71 *Ga.* 666, and *Iverson* v. *Saulsbury*, 65 *Ga.* 728, this court in construing this section held it to confer jurisdiction to finally act at chambers in proceedings contemplated by this chapter in the code. In the case, however, of *Rogers* v. *Pace*, 75 *Ga.* 436, it was held that the chancellor had no power to decree a sale of such a legal estate in remainder at chambers in vacation, and that a sale of the corpus under a decree so rendered conveyed only the trust estate of the life-usee. The reasoning of Justice Blandford, in *Rogers* v. *Pace*, on page 438, seems conclusive as far as it went, but it was based solely upon the provisions of section 2327 of the old code, which only authorized the sale of the corpus of a trust estate by order of the judge in vacation. That section was evidently an effort to codify the act of 1854 above cited. No reference whatever is made in the opinion to the provision of law embodied in section 4864 of the present Civil Code, and which we think, beyond question, has direct application to just such a proceeding as was had in this case. We are constrained to believe, therefore, that the last section cited, and other provisions in that same chapter, were entirely overlooked by the court when the decision in *Rogers* v. *Pace* was rendered. It is true, *Rogers* v. *Pace* has since been cited approvingly by this court in other cases; but we think, upon a careful review of all these later cases, none of them involve the identical question now under consideration and which was decided in *Rogers* v. *Pace*. In *East Rome Company* v. *Cothran*, 81 *Ga.* 359, the sale of the legal estate in remainder, there declared invalid, was under an order of court upon the petition of the trustee and life-tenant, to which the remaindermen, who were minors, were never made parties. See page 366. In that case it is worthy of note that there was subsequently an effort by petition, to which the minors were parties, to ratify the sale of their interest in the land previously had. The order of ratification

was granted at chambers. On page 367, Chief Justice Bleckley, who delivered the opinion, stated, that the order of ratification, though had at chambers, might have cured all defects in the title had the judge not been disqualified. If the judge had jurisdiction to grant an order of ratification at chambers, it seems to us it would necessarily have followed he would have had like power to grant the original order of sale at chambers, had the minors been properly made parties to the proceeding and represented before him.

In *Lamar* v. *Pearre*, 82 *Ga.* 354, the trustee represented the life-tenant only. It was simply held in that case that the interests of the remaindermen were not conveyed by the sale of the trustee under proceedings of the court to which they were not made parties. Of course this would have been true whether the order was granted in term or at chambers. In *Taylor* v. *Kemp*, 86 *Ga.* 181, the life-tenant applied for and obtained an order to sell the entire fee in the land. The application was made by him as trustee, but in point of fact he was not trustee for any one, and the property was not really encumbered with any trust. It does not appear in that case that the remaindermen were even made parties to that suit. In *Fleming* v. *Hughes*, 99 *Ga.* 450, it was decided that the judge of the superior court had no power at chambers to order a sale of the fee upon petition of one who was simply trustee for the life-tenant. It does not appear that the remaindermen were made parties to that proceeding. In the case of *Walker* v. *Pope*, 101 *Ga.* 665, there was an attempt, by one who assumed to act as trustee for an adult life-tenant, to sell the entire fee including the vested remainder of the children. There was no pretense that the children were parties to that proceeding and were bound by it; but it was sought to bind them by a subsequent settlement, by their consent, with the life-tenant; and the question in the case was one simply of ratification by the remaindermen and estoppel as against the rights of subsequent innocent purchasers.

Under the view we take of this case, the decision in *Rogers* v. *Pace*, even if correct law, does not control the main issue here involved. We have indulged in criticisms of that case, and have referred above to the main authorities relied upon by

plaintiffs in error to support its correctness, with a view of showing that the rule therein laid down should be restricted to what was actually decided, and not extended so as to further curtail the powers of a chancellor over the estates of his wards. As far as this court has ever gone is to declare that the chancellor has no power to grant at chambers an order for the sale of the legal estate of minors.    It has been nowhere intimated, that we are aware of, in the decisions of this court or in any opinion by any of its members, that since the adoption of the code it is necessary there should be a regular petition or bill in equity filed, process attached, copy served, and all other proceedings had as are usual in ordinary suits in equity.    The question as to whether or not a court of equity has inherent jurisdiction to order the sale of the legal estate of minors for the purpose of reinvestment is still an open one in this State. We confess that, after a thorough investigation upon this subject, we have met with considerable difficulty in arriving at a conclusion entirely satisfactory; and the difficulty has not been completely removed by the investigation of the numerous authorities bearing directly upon the subject.    There is a hopeless and an irreconcilable conflict of authority on the question among the decisions of the courts of last resort in the United States, as well as among the numerous text-writers, and in the courts of England.    From 10 Enc. Pl. & Pr. 733 et seq., we quote the following:    "At common law the guardian or trustee of an infant had no right to change the nature of an infant's property from realty to personalty, or vice versa; and it is still a disputed question, upon which the authorities are conflicting, whether even a court of equity can authorize such a conversion, in the absence of statutory authority; and by virtue of its general jurisdiction over the estates of infants, except for the purpose of paying debts and for the maintenance of the infant.    The jurisdiction has been claimed and exercised in many cases, the rule being broadly declared to be that chancery has jurisdiction to order a conversion of realty into personalty whenever it clearly appears to be for the infant's interest to make such a conversion.    But in England, and in many American courts, a contrary doctrine prevails, and it is

held that a court of equity has no inherent jurisdiction to direct a sale or mortgage of the real property of infants." As far as our examination of the English authorities has gone, we think that the weight of them denies to a court of chancery such inherent jurisdiction. But even here we are met with conflict; for in some of the cases holding this view, references are made to other decisions by the judiciary of England entertaining contrary views. We deem it unimportant, however, to enter into a review or a discussion of these English authorities; but it is well enough to bear in mind a fact that is recognized in many text-books on the subject, also in Supreme Court decisions of several States, and 10 Enc. Pl. & Pr. 737, that "the principal reason for denying this jurisdiction in England appears to have been that, by changing the nature of the minor's estate from real to personal, or from personal to real, the rights of third persons who would be entitled in case of the minor's death would be materially affected,. as in that country real and personal property descend in different channels, and also because it would formerly have changed the infant's power to make testamentary disposition of his property." For those and other reasons the doctrine has not been followed in many of the States of this Union. It has, however, been followed in others, and though there appears considerable conflict, we think the weight of adjudications on the subject is against the English rule.

In the case of Hale v. Hale, 146 Ill. 227, authorities upon this subject in Illinois and elsewhere were reviewed, and the court reached the following conclusion: "The power of courts of chancery by virtue of their general jurisdiction over the estates of infants to authorize the conversion of their real estate into personal, where it is clearly for their interest that such conversion should be made, is not only supported by the general current of authority in this country, but is so thoroughly settled by the former decisions of this court as to be no longer open to question in this State." In the case of Goodman v. Winter, 64 Ala. 311, is the following ruling: "In this State the chancery court, by virtue of its general jurisdiction over infants and their estates, has power to decree the sale of

an infant's lands, whether held under a deed or will, having regard to the necessities and interest of the infant; and this jurisdiction extends to contingent estates, or estates held in remainder, though it may be more sparingly exercised." It will be seen from the able opinion rendered in that case by Brickell, C. J., that the doctrine announced was based upon the inherent jurisdiction of a court of equity upon which rested the power and duty of the court to protect infants, to take care of and preserve their estates while under disability debarring them from the administration of the property; and a discussion is likewise entered into why a different rule prevails in England. The same doctrine is announced in Thorington v. Thorington, 82 Ala. 489; Gassenheimer v. Gassenheimer, 108 Ala. 651. This inherent jurisdiction of a court of chancery is recognized and affirmed by Chancellor Kent in the matter of Saulsbury, 3 Johns. Ch. 348, and Hedger v. Ricke, 5 Johns. Ch. 163; and in Snowhill v. Snowhill, 2 N. J. Eq. 20, 22. In the case of Bulow v. White, 3 Rich. Eq. (S. C.) 321, it is declared that it is not disputed that the court of chancery has the power to sell and convey the estate of an infant; and that however doubtful it may at one time have been considered, it is now too firmly established to be shaken; and that the exercise of this jurisdiction, through the process of petition, however originating, has been sanctioned and confirmed by long-established practice; and that the right of the court in this respect is no more to be disputed than its right to order the sale of property for investment under the more expensive procedure by bill. See also Bulow v. Buckner, 8 Rich. Eq. Cas. 401. Such general jurisdiction was also recognized by the Supreme Court of North Carolina in the case of Sutton v. Schonwald, 86 N. C. 198. Also in the case of Rowland v. Thompson, 73 N. C. 504; Myers v. Jacks, 33 Ark. 425. We call attention to the above authorities as a few of those in this country that do not recognize the general doctrine in England; and while there is considerable conflict, as above indicated, between those and the decisions of other courts, we think the decisions recognizing this general inherent power in a court of equity rest upon the sounder reason and the wiser policy. It is true that in many States

the question is of no importance, from the fact that the subject is regulated by statute.

Prior to the passage of the act of November 11, 1889 (Civil Code, §2545), the ordinary in this State had the authority to grant to the guardian of a minor child an order authorizing the guardian to sell unproductive real estate belonging to the ward, for the purpose of reinvesting the proceeds of the sale in other and productive property. *Crawford* v. *Broomhead*, 97 *Ga.* 614. It follows, therefore, when the orders for the sale of this trust property in 1869 and 1871 were passed, the act of December 21, 1827 (Cobb's Dig. 325, 326), authorizing a sale of realty belonging to orphans was in force, though, we believe, the same was not embodied in the code. We do not mean to say, therefore, that there was in equity or in the judge of a superior court of this State any inherent jurisdiction simply to sell the legal estate of a minor for the purpose of reinvestment, prior to the act of 1889; provided the application urged no equitable reason for the sale and attempted to accomplish no more than what the court of ordinary clearly had jurisdiction over. But that is not the case we are now considering. It should be borne in mind that this was not an application simply to sell the real estate of minors. There was involved in the matter an equitable estate, to wit a trust estate, over which no court had any jurisdiction except the superior courts of this State. The object of the application, and indeed it was the prime object for the appointment of a trustee, was to bring about a sale of the entire fee in this property, including not only the legal estate of the minors, but also the equitable estate in which they likewise had a beneficial interest. Manifestly the court of ordinary had no jurisdiction whatever in regard to the equitable estate. To have applied simply to the court of ordinary for direction to sell the fee in remainder in the property could not have accomplished the purpose of the petition. On the other hand, to have applied alone to the judge of the superior court for an order to sell the trust estate only would equally have failed in bringing about results that were manifestly for the interest of the beneficiaries; for it would simply have been an absurdity to have asked permission to

sell a life-estate in property which was bringing no income, with the view of raising proceeds sufficient to invest in property that would be sufficiently productive to support the beneficiaries.    Besides, the ordinary had no authority to direct a private sale which was desired to be accomplished in this particular case.    Here was a case, then, involving a matter over which equity clearly had jurisdiction; and this fact would give jurisdiction over other things connected with the equitable relief sought, although the court would not consider such other matters taken singly and alone, and not accompanied with any element in the case looking to equitable relief.    Even the strongest authorities denying chancery jurisdiction to order the sale of the legal estate of minors recognize the fact that under such circumstances, especially where the rights of third parties are involved, such sales could be legally had. ·   For instance, where the minors are tenants in common with other parties, the legal estate of the minors in such property may be sold and thus converted into money, upon the application of the other tenants in common desiring partition.

In this case there was another tenant in common with the minors, to wit their mother.    The very purpose of the conveyance of the land to them was that they might be provided with maintenance and support; and yet the property was in such condition that neither the mother nor the children could enjoy any benefits even of the life-estate without a sale of the entire fee.    The case might have been different had the minors no interest whatever in the life-estate; but where they not only own the legal estate in remainder but are likewise beneficiaries of the life-estate, and it is shown to be absolutely to their interest, and even necessary to provide for them support, maintenance, and a home, to sell the entire fee, including both their legal and equitable estates, we can see no reason why a chancellor (in this State the judge of the superior court) would not have the power, under the general inherent jurisdiction of courts of equity over the estates of minors and the interests of the wards of chancery when before them, to entertain jurisdiction and grant the relief prayed.    This is not, therefore, a case in which the abstract doctrine above referred to, that no such

inherent power exists in reference to a sale of the legal estates of minors, obtains, but we think, under its peculiar facts, it is to be clearly distinguished from all those cases in which this doctrine is recognized and enforced. For, if the superior court had not the jurisdiction in this case, then these plaintiffs were absolutely without any remedy whatever in any court of the State to obtain the relief which the petition of the trustee showed their distressed condition at the time demanded. We think it clearly a case where, under the broad and comprehensive powers of a court of equity over the estates of orphans and minors, the granting of the relief sought was within the inherent jurisdiction of the court.

6. We will now consider the question as to whether, under the facts of this case, the order of May 12, 1871, authorizing a sale of the property in question, was granted in term or at chambers. The petition of the trustee and life-tenant for the sale of the property had entered upon its back, "January Adjourned Term, 1871." The order of sale, granted by the judge, was signed by him as "judge of the superior courts of the Rome circuit, Jan'y adjourned term, May 12th, 1871." It was evidently the intention of the petitioners that their suit should be considered a term proceeding; and when the judge signed the order, he manifestly regarded it as a proceeding in term. It further appears that on the date of this order the court was actually in session and did not finally adjourn until the 7th day of June following. Before its final adjournment the entire proceedings were recorded upon the minutes of the court. These facts, in the absence of any proof to the contrary, are certainly sufficient to authorize the conclusion that this order was granted during a regular term of the court, in open court while it was actually in session. It is this open proceeding during a regular session of the court that distinguishes actions at term from such as are had in vacation and at chambers. It is insisted, however, that as the petition was never filed, the case not regularly docketed, no process attached, and the order directed a record of the proceedings as is usually done in matters decided at chambers, these facts conclusively demonstrate that this was a chambers proceeding. It was decided in

the case of *McGowan* v. *Lufburrow*, 82 *Ga.* 524, that the decree in that case, under the facts reported, was passed in term time and not at chambers.    The original record in that case, which we have just examined, shows that there was no prayer for process in the petition; no process attached to it; the petition was not filed until the very day the order was granted; there was no verdict of a jury; the petition itself was backed, "In Chatham Superior Court, in Chambers," and the order of the judge had the following caption: "Ex Parte Mary G. Lufburrow, Executrix, *et al.*    In Chatham Superior Court, in Chambers." It is true, it further appeared in that case by oral testimony that this order was actually granted in open court during the term; but that oral testimony is not stronger than the record in this case, which in effect declares the order now in question was actually granted in term.    There may be some question as to whether one would be allowed by parol testimony to contradict the record of the court; but it will certainly be presumed that the record speaks the truth, until the evidence is clear and positive to the contrary.    It is insisted, however, that this case of *McGowan* v. *Lufburrow*, is based upon special statutory provisions as embodied in § 4855 of the present Civil Code, which relates to proceedings by executors when it becomes impossible to carry out any last will and testament.    It will be seen, however, both from the facts in the *McGowan* case and from the opinion and reasoning of the court, that the proceeding was not based upon this section of the code.    It is true the petition was by an executor, but it was for the purpose of selling the portion of the legal estate of minors devised to them under the will, in order to pay off debts created by the life-tenant.    It is true, it appeared in the testimony that some small portion of these debts was chargeable against the estate.    The bulk of them, however, were debts of the life-tenant.    There was no pretense that for any reason it was impossible to execute the will; for that will directed in the first place that the debts should be paid.    On page 532 Justice Simmons expressly bases the authority of the court to act, in granting its order of sale, upon §§ 4221, 4222 of the old Code, §§ 4863, 4864 of the present Civil Code.    The court doubtless went upon the idea,

as intimated by Chief Justice Bleckley in *Blake* v. *Black*, 84 *Ga.* 399, and by Chief Justice Jackson in *Sharp* v. *Findley*, 71 *Ga.* 665, that executors are trustees and that in one sense that was a trust estate, because the will is a great trust conveyed to the executor, and hence the court had jurisdiction of that matter; not by virtue of § 4855, but under §§ 4863, 4864 of the code; and, bearing in mind that this court had previously decided a legal estate in remainder of minors could not be ordered sold at chambers, it was a material question in the *Lufburrow* case as to whether the order of sale was granted at chambers or in term.    However that may be, the question was directly made and directly decided that, under the facts of that case, the final action of the judge was had during term and not in vacation.

In the *McGowan* case, 82 *Ga.* 534, it was decided that under the provisions of § 4221 (§ 4863 of the present Civil Code), it was not necessary to file an ex parte petition any number of days before the term, as that section prescribes no time wherein a petition of this character should be filed.    The court further held in that case, that even if the omission to file the petition had been irregular, it would not have made the decree entered thereon void.    See also *Dean* v. *Central Cotton Press Co.*, 64 *Ga.* 670; *Southern Marble Co.* v. *Stegall*, 90 *Ga.* 237.    In the last case cited it is true the suit was by an executor and based upon an impossibility to carry out the will; but it is clearly indicated in that case that it was a term proceeding, and the fact that there was a failure to attach process to the petition and the failure to file the same did not vitiate the proceeding or make it one at chambers.

Considerable stress is laid, in this case, on the fact that the judge, in his order authorizing a sale of this property, also directed a record of the proceedings, thus indicating an intention to comply strictly with the act of February 20, 1854, authorizing a sale of trust estates at chambers.    In the case of *Southern Marble Co.* v. *Stegall*, 90 *Ga.* 241, a similar order was granted with reference to a record of the proceedings in that case; so it seems to be not an unusual thing for such orders to be given in cases decided at term.    In the case at bar there appears a special reason for granting this order.    The petition had refer-

ence to a suit in equity had in Clarke superior court, which fixed the title to this property in Mrs. Ralls and her children. It was desired, not only that the pleadings should be recorded, but also that the bill and decree in Clarke superior court should likewise be entered of record, and hence a special order was prayed for and granted for this purpose. Counsel for plaintiffs in error rely upon a dictum by Chief Justice Jackson, in *Sharp* v. *Findley,* 71 *Ga.* 663, in which it is stated that there was no regular bill in equity filed and served according to law, and that the case may be considered as one at chambers. In that very connection, however, the Chief Justice stated that the order was actually passed in term. On page 668 (4) the proceeding is clearly regarded as one in term, and the court simply decided that this fact would not render the decree less effectual than if passed at chambers. Even if the facts of this case, with reference to the granting of this order, are open to two constructions, one, that it was granted in term, and the other at chambers, "it is our duty, in favor of jurisdiction to pass the order and the proper exercise of the same, to adopt that construction which treats the order as completely legal, rather than that which would hold it partially illegal, and, to that extent, void or voidable." *Lamar* v. *Pearre,* 82 *Ga.* 360.

7. The more especially should such a construction be adopted and enforced, when we consider the fact that the rights of innocent purchasers are involved. Equity is always loath to interfere with such rights, and courts "have gone far to protect such purchasers even when they held under doubtful or irregular sales or defective or incorrect judgments of courts having jurisdiction of the subject-matter." *Sharp* v. *Findley,* 71 *Ga.* 677–8; *Schley* v. *Brown,* 70 *Ga.* 64; *McGowan* v. *Lufburrow,* 82 *Ga.* 534. There is no question from this record that the parties under whom the defendant claims are innocent purchasers, for value, of the property in dispute. There was some testimony that some of these plaintiffs, while minors, knocked down a portion of a wall that the original purchaser was undertaking to erect upon the property, but this was evidently after the purchase and after the vendee commenced to improve the property he had innocently and in good faith bought. The

petition for the sale of this property was brought, not only by the trustee, but by the mother of these plaintiffs. It presented a case of absolute necessity for the sale of the entire property, in order to provide for them the necessaries of life and to procure for them a home or farm from which they could make a support. While equity regards a minor as a privileged person and should vigilantly protect and guard his rights in every proceeding that involves his interests, yet, when the minor is properly represented in court and it has jurisdiction over his person and the subject-matter, the law will always presume that the chancellor acted wisely and in the full discharge of his duty with reference to the estate of his ward. Neither principles of law, equity, nor justice would, in such a case, tolerate setting aside the judgment for any mere irregularity, especially when the effect of such a course would be to deprive the innocent, not only of the property they purchased, but of improvements placed thereon, enhancing it perhaps tenfold in value. We do not think there was really any defect attending the granting of this order by the judge on May 12, 1871; and even if there was, it was a mere irregularity which did not render void the judgment of the court. We therefore conclude that whatever title the plaintiffs had to the property sold under this order was divested by virtue of this sale, and that therefore there can be no recovery, under the facts of this case, of this portion of the premises in dispute.

8. The title to the Wadsworth triangle, however, stands upon an entirely different footing. This property was sold under an order of court, granted on July 20, 1869, upon a petition filed by Mrs. Sarah A. C. Ralls. In that petition she alleged that her father, J. C. Branch, had held the property in trust for her separate use. No allusion whatever was made in it to her children. The father having died, she prayed the appointment of a trustee as his successor, and that he be clothed with the legal title to the property. She asked that the same be sold, a cheaper residence bought, and so much of the surplus as was needed applied to buy necessaries for herself and children. A trustee was accordingly appointed, and an order for the sale granted. The purchaser at the sale under this order acquired all title,

rights, and equities in the land, which were owned by Mrs. Ralls. After this sale Mrs. Ralls, for herself and children, brought her bill in Clarke superior court. She states in her bill that her father, John C. Branch, had repeatedly, in the presence of witnesses, expressed his intention and purpose to convey in trust to complainant, for the benefit of herself and children, said property according to the terms of a trust deed executed by him to one George S. Black, on November 24, 1860. It further appears from her petition, that a portion of the purchase-money paid by Branch for the property was her individual money previously advanced by her father as part of her share of his estate. The verdict of the jury rendered at the February term, 1879, was, that Branch did purchase of A. Shorter and *give to the said* Sarah A. C. Ralls the land in question, that Mrs. Ralls had since been in possession thereof, and that the land had been paid for by Branch in part with her money which he had before *given her.* The verdict further specified, that Branch had intended to convey said land to her and her children under the same terms and limitations in the trust deed to Black, and had frequently so expressed himself. The jury thereupon found the title vested in the said Sarah A. C. Ralls and her children, and that the executor execute to Jones, in trust for them, a deed of conveyance under the same terms and limitations as were contained in the Black deed. Here, then, are two petitions filed by Mrs. Ralls, in one of which she alleged, in effect, the property belonged to her by virtue of a gift from her father; in the other she alleged, and the jury so found, that it was given to her, but that it was the intention of the father to convey it to her and her children in accordance with the terms of the Black deed. This Black deed, however, was not executed until 1860, about ten years after the parol gift to Mrs. Ralls.

There is but one way in which the two petitions can be reconciled, and it seems to us a legitimate construction to place upon them and the only one that can be placed without imputing falsehood to the petitioner. The property was given to her and she put in possession thereof about the year 1849 or 1850. No mention was then made of the children. He afterwards said

that he intended to convey the land to her and her children just like he had conveyed the property in the Black deed; but a declaration of that intention was not made until after the execution of the Black deed, which was some ten years after the parol gift to Mrs. Ralls. Either Mrs. Ralls, or her husband by virtue of his marital rights, clearly had an equity in this land and a right supported by something else besides a mere parol gift for love and affection. A portion of the premises was bought with her own money, and upon the strength of the gift either she or her husband made valuable improvements upon the land and remained in possession thereof for nearly twenty years. But what equity did the children have in the land? Upon what claim of right or title could they have based a proceeding, at any time prior to the decree of Clarke superior court, had in 1870, to recover from Mrs. Ralls the premises in dispute? All that their claim could have been founded upon was a parol understanding or declaration made by their grandfather, engrafting a trust upon the land, in their favor, after he had parted with all equity to it by a gift to their mother. Outside of the pleadings to which we have referred, instituted by their mother, there is absolutely nothing in this record to support even such a claim. The will executed by Branch mentions advances that he had made to his children, and among them property to the amount of several thousand dollars made to Mrs. Ralls; but nowhere in that will does he refer to the premises in dispute or to any property which he intended to convey to Mrs. Ralls and her children. The parol testimony introduced on the trial of this case fails to disclose even such a purpose on his part, and the testimony of the witnesses with reference to improvements is to the effect that these improvements were placed upon the premises by the husband of Mrs. Ralls. It is true, by virtue of the record of Clarke superior court the children acquired an interest in this land, including a legal estate to the fee in remainder thereto; but the purchaser of the Wadsworth triangle was not a party to this proceeding, nor does he claim under any sale based upon that decree.

We must therefore determine the rights of these parties by

the condition of things that existed when the Wadsworth triangle was sold in 1869. When this sale took place, it is not pretended that there was anything whatever to put the purchaser on notice of any claim which these children had to the land. All right they acquired thereto was by virtue of a decree of court granted subsequently upon the petition of their mother, and based, at that, not upon any real equity they had in the land, but purely and simply upon a declaration made by the original owner after he had given the land to their mother. Even if this declaration had been made in writing, it could not have operated to have conferred a valid legal title upon these plaintiffs. See *Lemon* v. *Wright*, 31 *Ga.* 317. Much less could a trust in land be thus set up by parol. Under the facts in this case, therefore, we think that when the sale of this Wadsworth triangle was had in 1869, Mrs. Ralls had an equity in the land at least superior to that of her children, and she could have then successfully defended any action which might have been instituted by them against her for the recovery of any interest in the premises. If this be true, then it necessarily follows, a fortiori, that an innocent purchaser of her interest, without any knowledge whatever of the children's equity or claim, acquired by that purchase a title superior to any claim of these plaintiffs.

It appears further from the record in this case, that the possession by the mother, of the property in dispute, covered a period of about twenty years prior to the decree of court creating the trust estate in favor of herself, with fee in remainder to the children. Under section 3571 of the Civil Code, exclusive possession by a child of lands belonging originally to the father, without payment of rent, for the space of seven years, creates conclusive presumption of a gift. Between January 22, 1852, and the adoption of the Code of January 1, 1863, there seems to have existed no law in this State allowing an adverse possession on occupancy alone to ripen into a title; and the section cited, as well as sections on the subject of twenty years prescriptive title and seven years under color of title, as they now exist in our law, became of force by adoption of the first code. While this is true, however, it does not follow that these provisions of the code do not relate back to a prior pos-

session. In the case of *Shiels* v. *Roberts*, 64 *Ga.* 372–3, this court applied the rule of twenty years possession to a case where such possession commenced prior to the adoption of the code, and it was ruled that it was competent for the legislature to take into account the past possession and tack that to the future possession to make the twenty years. We do not see why a like rule would not apply to a presumption of gift arising out of the possession by a child for seven years. But, however this may be, as above indicated, apart from this question of pre-scription, there was a complete equity outstanding against the claim of title set up by the plaintiffs in error. It is true that by virtue of his marital rights the husband of Mrs. Ralls may have acquired this title; but as to the particular piece of land in question, the defendant, not claiming under the same orig-inal grantor with the plaintiff, had a right, as a defense against plaintiffs' action, to show an outstanding title or equity supe-rior to that set up by plaintiffs. The weight of authority is to the effect that such outstanding title can not be shown where the plaintiff and defendant claim under the same original grantor, and where the defendant fails to connect himself with such outstanding title; and there is no conflict in authority on the proposition that this defense is allowed in an ejectment case when the parties do not claim title from the same original source.

It is further insisted that the decree of Clarke superior court, rendered in 1871, related back to the parol gift by Branch in 1849 or 1850, and that therefore these plaintiffs had a title paramount to that of the defendant, even as to this particular part of the property now under consideration. It is true that their title does thus relate back in so far as are concerned the rights of all who were parties to the proceeding in which said decree was rendered; but it would certainly be a dangerous precedent to hold that such a decree was binding upon inno-cent purchasers who were not parties to the case, and to apply to them a judgment of the court which they could have suc-cessfully resisted, under the facts in this record, had they been parties to the proceeding. The conclusion, therefore, is that before the plaintiffs' rights were established by the decree of Clarke superior court, a sale by their mother, or her trustee, of

the Wadsworth triangle, precluded them from any recovery of this property, or from asserting any rights thereto, against those who had innocently purchased it without knowledge of their equity, if any they ever had.

The above views render it entirely unnecessary for us to consider the other important and interesting questions made by this record, touching mense profits, and the outstanding title in the husband of Mrs. Ralls which defendant claims to be superior to any title set up by plaintiffs, and the doctrine of estoppel and ratification which was also set up by way of defense to this action.     The views above expressed dispose of the entire case; for under the facts we hold that no recovery can be legally had by plaintiffs.

*Judgment affirmed.   All concurring, except Simmons, C. J.*

Simmons, C. J., dissenting.     1. The deed executed under the decree of the superior court of Clarke county on February 14, 1871, by the executrix of the estate of James C. Branch, in specific performance of a parol gift made by the latter many years before, conveyed the land in dispute to B. F. Jones, with words of inheritance, as trustee for Sarah Ann C. Ralls and her present children and any future child or children of hers, free from the debts, contracts, and control of her present husband, as well as any future husband she may have, and after the death of the said Sarah Ann C., to her children, free and relieved of the trust.     Under this deed the children, who are the plaintiffs in this case, took an equitable estate as joint usees with their mother during her life, and a legal estate in remainder in fee to take effect in possession at her death.     *Franke* v. *Berkner,* 67 *Ga.* 264, 265, 267 ; *East Rome Town Co.* v. *Cothran,* 81 *Ga.* 359 (1), 360–365; *DeVaughn* v. *McLeroy,* 82 *Ga.* 706, 707 ; *Holcombe* v. *Tuffts,* 7 *Ga.* 538, 544, 545, 546.     This legal remainder vested in the children living at the date of the deed, subject only to open and take in any other child or children who might thereafter be born.     *Olmstead* v. *Dunn,* 72 *Ga.* 860, 861.

2. The trust estate therefore, so far as the children are concerned, was confined to the estate in common which they held as joint usees with their mother during her life.     It is so ex-

pressly limited by the deed itself. Consequently the estate of the trustee was less than the fee, because it did not and could not include the legal remainder. *Franke* v. *Berkner* and *East Rome Town Co.* v. *Cothran*, supra. The extent of a trustee's estate is measured by the purposes of the trust, and not by words of inheritance affixed to his name. Ibid.; *Fleming* v. *Hughes*, 99 *Ga.* 446. In the case at bar the purposes of the trust were wholly disassociated from the estate in remainder, and the deed did not invest the trustee with any power of sale. Hence a sale of the fee by the said trustee only conveyed to the purchaser an estate for the life of the life-tenant, unless the fee was authorized to be sold by the trustee under a lawful judicial order or decree.

3. The petition for the sale of the property to the Rome Hollow-Ware and Stove Company was presented by the trustee as trustee for the mother and children, and by the mother in her individual right. A copy of the aforesaid deed was attached to the petition. The only property which the trustee held in trust for the children was, as above stated, the estate in common which they possessed as joint usees with their mother during her life. The other estate in the property possessed by them, to wit the remainder, was shown by the deed itself to be a legal estate. The order of court appointing a guardian ad litem expressly named such guardian to represent the children in the "application for the sale of the trust property." By using the definite article *the*, the judge more clearly indicated that he must have recognized that the title set forth in the petition and deed showed a trust estate and a legal estate, and that his jurisdiction was over the trust estate alone. The order to sell recognized the trustee in that character only, and authorized the trustee, as such, to sell the portion of "said property" mentioned in the application for the sale. These words "said property" might bear two interpretations; first, the trust property in the designated portion of the land, or, secondly, the entire estate therein, equitable and legal. The first construction would impute a legal intent to the judge and make the order completely legal, because he only had jurisdiction to order the sale of *trust* property, as will be hereinafter

shown. The second construction would impute an illegal intent to the judge and make his order legal in part and void in part, for the reason just mentioned. "Where two constructions are open to our choice, it is our duty, in favor of jurisdiction to pass the order and the proper exercise of the same, to adopt that construction which treats the order as completely legal, rather than that which would hold it partially illegal, and, to that extent, void or voidable." *Lamar* v. *Pearre*, 82 *Ga.* 360. Therefore, to hold that the order only authorized a sale of the trust property will be to treat the order as completely legal, granting that the children had notice of the petition for the sale. Admitting, however, that both the applicants and the judge intended a sale of the fee in the property, still their intention, unlike that of a donor or grantor, would amount to nothing, because the applicants did not have the fee to sell, and the judge had no power to give them authority to sell it. Hence the case of *Headen* v. *Quillian*, 92 *Ga.* 222, 223, defining the words "the said trust estate," as used and intended by the donor in the deed in that case, where, as Judge Bleckley says, "he evidently thought there was more than one trust," by using the words "subject to the above-described trusts" in giving the trustee a power of sale for reinvestment, as well as section 3083 of the Civil Code in reference to the presumption and effect of a sale where parties have the fee to sell and offer the property for sale, have absolutely no application to the question now under consideration. But the question of imputing a legal intent to the judge or chancellor, which is fully recognized in the case of *Lamar* v. *Pearre*, supra, where the change of trustees and the subsequent order to sell the trust property for payment of trust debts and for reinvestment were restricted to the life-estate, may be classed as subsidiary to the vital question presented, whether the superior courts of this State as courts of equity, or the judges thereof, were invested in 1871 with either the inherent or statutory power to decree or order the sale of infants' legal estates in real property for reinvestment.

4. The origin of the inherent jurisdiction of equity over the persons and estates of infants, which was for a long period in-

volved in doubt and dispute, was finally rested upon the principle that the King was the protector or parens patriæ of all infants in his kingdom, and that he delegated this right to his court in chancery. Story's Eq. Jur. §§ 1328–1334; Pomeroy's Eq. Jur. § 1304. But the court, like the King, exercised only the care of infants and their property, and did not assume to itself the actual guardianship of them, though often characterized as their general guardian. Daniell's Ch. Pr. (6th. Am. ed.) 1347; 1 Maddox's Ch. Pr. 331; Macpherson on Infants, 103; 9 Enc. Pl. & Pr. 890, and the cases cited in the notes thereto. The extent of this jurisdiction, in addition to appointing guardians for infants having no testamentary guardians, and afterwards governing their custody, maintenance, and marriage, related to the management of their property, which, as hereinafter shown, has always been well defined and limited:—The protection and preservation of their property against their parents, guardians, and other persons: Butler v. Freeman, Ambler, 302; Adams's Equity (7th Am. ed.) 281; Pomeroy's Eq. Jur. § 78; Daniell's Ch. Pr. (6th Am. ed.) 1362. The enforcement and protection of trusts in their favor: Losey v. Stanley, 147 N. Y. 570. The granting of authority to their guardians to make leases of their lands until their majority: Daniell's Ch. Pr. (6th Am. ed.) 1364; Macpherson on Infants, m. p. 311. The sale of their equitable estates: 10 Enc. Pl. & Pr. 737, and cases cited in note 3; Woerner's Am. Law of Guardianship, 247; upon the reason, probably, that trusts are within the exclusive jurisdiction of equity, and, in a court of equity, "are invariably applied to property (and especially real property), and not to persons." Story's Eq. Jur. § 1330. And the sale of their legal estates over which the court has acquired jurisdiction by litigation or proceedings under some one of its many heads of ordinary jurisdiction, such as in cases for receiverships (*Walker* v. *Morris*, 14 *Ga.* 325–327); partition (Adams' Equity, m. p. 285; 10 Enc. Pl. & Pr. 734, note); injunctions against actions of ejectment, and other cases where the title and right of property comes before a court of equity for adjudication (*Groce* v. *Fields*, 13 *Ga.* 24; Losey v. Stanley, 147 N. Y. 570, 571); relief when it is impossible to carry out

the provisions of a will (*Sharp* v. *Findley*, 59 *Ga.* 730; *South-ern Marble Co.* v. *Stegall*, 90 *Ga.* 237); payment of mortgages or other debts of their testators or intestates (Daniell's Ch. Pr. (6th. Am. ed.) 1345; Macpherson on Infants, m. pp. 412, 413; 10 Enc. Pl. & Pr. 734, note; Woerner's Am. Law of Guardian-ship, 227); payment of legacies charged on lands devised to them (Powell *v.* Powell, 6 Madd. Ch. 53; *Dean* v. *Central Cot-ton Press Co.*, 64 *Ga.* 671, 672); payment of estate debts upon the application of the executor and devisees to protect the rest of the estate from imminent 'sale by clamorous creditors (*Mc-Gowan* v. *Lufburrow*, 82 *Ga.* 523; *Blake* v. *Black*, 84 *Ga.* 399, 400); and the adjustment of the rights of vendor and infant vendee, where the latter buys and acquires possession of the property and afterwards disaffirms the contract by a plea of infancy when sued for the balance of the purchase-money (*Strain* v. *Wright*, 7 *Ga.* 568; *Thomason* v. *Phillips*, 73 *Ga.*140). For these purposes the jurisdiction of equity is plenary and unquestioned; and when petitions or suits by bills thus in-volving the persons and estates of infants are brought, to which the infants are parties, either plaintiffs or defendants, they become wards of court or in chancery. Butler *v.* Free-man, Ambler, 302, 303; Williamson *v.* Berry, 8 How. (U. S.) 555; *Sharp* v. *Findley*, 71 *Ga.* 654; *McGowan* v. *Lufburrow*, 82 *Ga.* 523; Pomeroy's Eq. Jur. § 1305. In this character they are entitled to the special protection of the court, and with which duty the court is thenceforth charged, on the principle, as stated by Lord Eldon in the case of Wellesley *v.* Duke of Beaufort, 2 Russ. 20, "that the law should place somewhere the care of individuals who can not take care of themselves." This is no more than is enjoined upon the courts of ordinary in this State, which are also called the protectors and guardians of infants within their jurisdiction. *Deyton* v. *Bell,* 81 *Ga.* 382. The court does not thereby acquire jurisdiction over the wards for all purposes (Butler *v.* Freeman, Ambler, 302, and the authorities cited infra on the inherent jurisdiction of equity to decree the sale of infants' legal estates in real prop-erty); and it would be idle to say that the mere naming of in-fants as sole defendants in a bill or respondents in a petition

would give the court jurisdiction to authorize a sale even of their trust property; for in such cases they are put upon the same footing as adults as to service or notice before a decree or order can be made affecting them or their estates. Daniell's Ch. Pr. 444, 1606, 1607; *Hill* v. *Printup*, 48 *Ga.* 453, 454. Indeed as early as 1697, it was the boast of Lord Ch. King that in "chancery, where the interest of infants is so far regarded and taken care of, no decree shall be made against an infant, without having a day given him to show cause after he comes of age." Lord Falkland *v.* Bertie, 2 Vern. 342. And the rule thus announced by this learned chancellor was adhered to by the chancery courts of England, even in granting decrees for the sale of infants' estates acquired by descent and devise, when suit was pending in equity to sell the property for payment of their testator's or intestate's debts (Blatch *v.* Wilder, 1 Atk. 420; Uvedale *v.* Uvedale, 3 Ibid. 117; Daniell's Ch. Pr. (6th. Am. ed.) 164–168), until it was changed as to such decrees by the statute of 1 Will. 4, ch. 47, s. 11. Macpherson on Infants, m. pp. 412, 413, 423, 427.

The inherent jurisdiction of equity to decree a sale of the legal estates of infants in real property for reinvestment, by bill or petition for that purpose, has been questioned and denied from the earliest times to now. In England, where the chancery jurisdiction for the protection of infants and their estates originated and is continued, the courts of chancery have uniformly denied this first-mentioned and greater power without the aid of an act of parliament. Adams' Equity (7th Am. ed.), 284, 285; 1 Spence's Equity, 613; Daniell's Ch. Pr. (6th Am. ed.) 168, 169; 9 Am. & Eng. Enc. L. 126; 10 Enc. Pl. & Pr. 734, 736, and notes; Schouler's Dom. Rel. §§ 356, 357; Woerner's Am. Law of Guardianship, 225, 226. In Taylor *v.* Phillips, 2 Ves. Sr. 23, decided in the year 1750, Lord Ch. Hardwicke said: "There is no instance of this court's binding the inheritance of an infant by any discretionary act of the court. As to personal things, as in the composition of debts, it has been done; but never as to the inheritance, for that would be taking on the court a legislative authority doing that which is properly the subject of a private bill." And in Russel *v.* Russel, 1 Molloy,

525, decided in the year 1827, Lord. Ch. Hart said: "I have no authority to bind an infant's legal real estate. That was decided long ago by Lord Hardwicke in Taylor *vs.* Phillips. The chancellor has never since attempted to deal with the legal inheritance of infants, without the aid of an act of parliament." These two cases, which are most frequently cited, are but an exemplification of the rule maintained in many other English chancery cases, among which are Simson *v.* Jones, 2 Russ. & M. 374, 377, and Calvert *v.* Godfrey, 6 Beav. 97, 109. In Simson *v.* Jones, the master of the rolls says: "This court has no authority to give an infant a power of alienation, even for her own benefit." And, "By the rules of law, she has no power of disposition during her minority; and this court has, I think, no jurisdiction to give her such power, and I am not aware that any case can be found in which the court has attempted to exercise such a jurisdiction." And in Calvert *v.* Godfrey, Lord Langdale, M. R., distinctly denied the inherent jurisdiction of equity to order the sale of an infant's legal estate merely because it was beneficial to the infant, when no suit was pending by any person who had a right to call on the court to sell the estate for the payment of a debt.

The English rule as above announced has been adopted and followed by a decided weight of authority, both judicial and elementary, in this country. In addition to the many American cases cited in 10 Enc. Pl. & Pr. 736, see Price *v.* Winters, 15 Fla. 101; Onderdonk *v.* Mott, 34 Barb. 106; Dodge *v.* Stevens, 105 N. Y. 589; Bent *v.* Maxwell, L. G. & Ry. Co. (N. M.), 3 Pac. Rep. 721, 733, 734; Hoback *v.* Miller (W. Va.), 29 S. E. Rep. 1014 (2), 1015; Perin *v.* McGibben, 53 Fed. Rep. 86 (6), 96, 3 C. C. A. 443, 6 U. S. App. 648; Stansbury *v.* Inglehart, 20 D. C. 134, 152, 154; and the following additional American text-books: Barton's Ch. Pr. § 170; Bispham's Eq. § 549; Pomeroy's Eq. Jur. § 1309; Perry on Trusts, § 610; Tyler on Infancy and Coverture, § 193, p. 296; 3 Wait's Actions and Defenses, 555. The case of Anderson *v.* Mather, 44 N. Y. 260, which was an application for the sale of an infant's equitable estate, shows the distinction which exists in the jurisdiction of a court of equity to decree a sale of the

equitable and legal estates of infants. The court says: "The power exercised by the court of chancery as to the sale of the estates of infants of an equitable nature is inherent and not derived from statutory authority. The power conferred by statute relates to lands of which an infant is seized, and not to his equitable estates." And in the case of Losey v. Stanley, 147 N. Y. 569–571, the trustee's estate, as the court held, only extended over the estate of the life cestui que trustent, and the remainder, which belonged to infants, was a vested legal estate. Upon the application of the trustee, the lower court, which possessed equity powers, appointed a guardian ad litem for the infant remaindermen, and afterwards authorized the trustee to sell or mortgage the entire property, equitable and legal. Chief Justice Andrews rendered the opinion of the Court of Appeals, which was unanimous, reversing the action of the court below so far as it affected the legal estate of the infant remaindermen. After showing the origin and extent of the inherent jurisdiction of equity over the legal estates of infants, he said: "The doctrine has been frequently declared in this State that a court of equity has no inherent power to direct the sale or mortgage of the real property of infants, and that its power in this respect is purely statutory. (Rogers v. Dill, 6 Hill, 415; Baker v. Lorillard, 4 N. Y. 257; Forman v. Marsh, 11 Id. 544; Horton v. McCoy, 47 Id. 26; Jenkins v. Falvey, 73 Id. 355, 361.) The obiter remarks of Ch. Kent on the subject in Matter of Salisbury (3 Jo. Ch. 348), and in Hedger v. Ricker (5 Jo. Ch. 163), are contrary to the general current of authority. The text-books are explicit in stating the modern doctrine on the subject. (Pom. Eq. Jur. § 1309; Bispham's Eq. § 549.) The question of the inherent power of a court of equity to order a sale of an infant's real property, upon the theory of a supposed benefit to him, is quite distinct from its acknowledged power in the enforcement and protection of trusts, and from the power of courts in the exercise of their ordinary jurisdiction to establish or enforce rights of property between parties to a litigation, whether infants or adults."

A comparison of p. 281 with pp. 284 and 285 of Adams' Equity, of §§ 541–548 with § 549 of Bispham's Equity, and of

§§ 1303–1307 with §§ 1308 and 1309 of Pomeroy's Eq. Jur., will alone show that the protective powers and inherent jurisdiction of chancery over the persons and estates of infants and making them wards of court for these purposes is one thing, and entirely distinct from the alleged inherent jurisdiction of equity to decree a sale of an infant's legal estate in real property for reinvestment. And it may be added that the rule thus announced as to infants' legal estates in realty is also applicable as to their legal estates in personalty in this State. Any case that might be cited showing that a court of equity, either in England or in this country, has upheld the private sale alone of personal property made by a guardian, upon a supposed benefit to the infant ward, would not be applicable in this State, because, apart from other reasons, the primary reason upon which it would have to be grounded is that in England and in many of the States in this country, guardians, by virtue of their office, have a power of sale when fairly and reasonably made, over the personal estate of their wards ( 9 Enc. of Pl. & Pr. 921; Woerner's Am. Law of Guardianship, 179); whereas, in this State, this common-law power is restrained and the mode of sale pointed out by statute. Therefore, in this State, personalty of wards, as to sales, is placed upon the same footing as realty, and guardians here have no power, by virtue of their office, to sell either class of property for reinvestment, or a court of equity, in this State, by its inherent jurisdiction, to uphold such a sale; and if it can not sustain such sales in the end, it can not authorize them in the beginning. There is nothing in 6 Am. & Eng. Enc. L. 723 (12), 10 Enc. Pl. & Pr. 588, and 10 Am. & Eng. Enc. L. 692–3, which are cited in behalf of the defendant in error, that can be said to conflict with the above ruling or stand against the mass of authorities sustaining it. The first citation merely refers to the origin of the jurisdiction of equity for the protection of infants, which is now admitted by all courts and text-writers, and not to the sales of their property. The second citation deals with the ordinary jurisdiction of equity in protecting infants and their estates, while the inherent jurisdiction of equity *to sell* an infant's *legal*

estate for reinvestment is treated in the same work on pages 733 to 737, inclusive. And the text of the third citation is based on the case of Pace v. Pace, 19 Fla. 438, which is a case brought by an infant ward to have his property protected and preserved from the illegal acts of the guardian, and has no connection with the inherent jurisdiction of equity to decree a sale of an infant's legal estate in real property for reinvestment, which jurisdiction the Supreme Court of Florida denied in the case of Price v. Winter, 15 Fla. 101.

All the conflict and confusion on this subject has been caused by a few text-writers and courts in this country. Some have erroneously ascribed to the English courts of chancery the exercise of a principle which never existed, as that said courts would convert the nature of an infant's estate from personalty into realty and from realty into personalty whenever such change was for the infant's benefit, and applying this alleged principle of absolute conversion to sales of infants' lands. Ch. Kent so stated and applied this doctrine in his Commentaries (pp. 242, 243), and by dictum in the Matter of Salisbury, 3 Johns. Ch. 348, and Hedges v. Ricker, 5 Johns. Ch. 163, on the authority of the cases of the Earl of Winchelsea v. Norcliffe, 1 Vern. 435, and Inwood v. Twyne, Ambler, 417. The case in Vernon merely relates to the investment of money in land by the trustee of an infant, subject to the latter ratifying the investment when he became of legal age, and the Lord Chancellor stated, on pp. 436 and 437, that if the trustee had applied to the court for a decree to invest this equitable fund it would have been allowed sub modo. And the case in Ambler, which cites the one in Vernon, was confined to allowing the money of an infant, who was entitled in remainder to a jointure in land under marriage articles, to be invested in the life-estate of such jointure; and the purchase was regarded as land, aside from the purchase being merged with the infant's existing remainder interest in the land, (1) because it was bought upon the application of the infant, who was of years of discretion; and (2) because the infant ratified the purchase after reaching the age of twenty-one. Macpherson, in his excellent treatise on Infants, m. p. 283, speaking of this last-

mentioned case, says: "His lordship [Lord Northington] used expressions which seem to claim for the court the power of making an absolute and unqualified conversion of an infant's property; but it has been already seen that the best authorities do not sanction this view." In the case of Lord Falkland *v.* Bertie, 2 Vern. 342, Lord Ch. King said: "This court never pretended to change the nature of infants' estates," which is also declared in Fonblanque's Equity, p. 88. Moreover, this principle of conversion was never applied in England to cases of sales, which I will explain in the next paragraph, and especially of infants' lands, which I have already discussed in extenso. And in the recent case of Losey *v.* Stanley, 147 N. Y. 570, hereinbefore cited, the Court of Appeals of that State unanimously disapproved the doctrine thus announced by Ch. Kent, as being against the general current of authority.

Others repudiate the above-alleged principle, and assert, though also in error, that the English rule against the sale of an infant's real estate for reinvestment is based on decisions of the English chancery courts prohibiting the conversion of personalty into realty and realty into personalty, on the grounds (1) that the conversion of personalty, if permitted, would deprive the infant of his testamentary power of disposition over such property, as the law existed prior to the new wills act of 1 Vict. c. 26; and (2) that personalty and realty, in England, are distributed and descend, respectively, in different channels. 10 Enc. of Pl. & Pr. 737; Woerner on Am. Law of Guardianship, 225. The principle of conversion, in the sense here used, as shown by the English authorities, is confined in connection with personalty to the investments of money by guardians and trustees in lands, or in paying off incumbrances and debts for repairs on infants' lands, and in connection with realty when the guardian or trustee has felled timber on or taken minerals from the lands of infants. See Macpherson on Infants, m. pp. 280 to 303, inclusive, and 306–308, where the whole subject is clearly stated with ample citations; also note in 10 Enc. of Pl. & Pr. 734. And when the conversions were thus made, they were allowed only to the extent mentioned, with the proviso, that the land purchased shall be considered, during the in-

fant's minority, as constructively personal (Adams' Equity, 285), and the felled timber, or its proceeds, as real property (Story's Eq. Jur. §1357), in order to fall within the two reasons above mentioned as to testamentary disposition and distribution and descent. And there is nothing to the contrary in the section of Story's Eq. Jur. just cited, when the text is read in connection with the authorities 'cited in the notes thereto, in not one of which is anything said or intimated about a sale of either the personal or real property (viz., lands) of infants. This principle of conversion, according to the authorities cited, was not applied in England to sales of property by guardians. If we so apply it, we will see that the two reasons specified above against the conversion of infants' property exerted no influence whatever upon the English chancery courts in the denial of their inherent jurisdiction to decree a sale of infants' legal estates in real property merely for the infants' benefit, as for reinvestment. The first reason stated against the conversion of infants' personalty into realty — strictly speaking, of money into land — that the infant would be deprived of his testamentary power of disposition over the former before the statute of 1 Vict. c. 26, could not have influenced the court in preventing the conversion of realty into personalty. And the second reason — the difference in the distribution and descent of personal and real property — would seem applicable; but that even this reason exerted no influence is shown by the fact that the chancery courts of England never allowed the sale of an infant's legal estate in land for reinvestment in land. On the contrary, as hereinbefore shown, they uniformly denied this power without the aid of a statute; and statutes conferring this jurisdiction in particular cases were not enacted. in England until late in the present century. See Macpherson on Infants, m. p. 318 ; Daniells' Ch. Pr. (6th Am. ed.) 169, note, and .1873, 1874.

Again, as in Woerner on Am. Law of Guardianship, 227, cases upholding the sale of equitable estates of infants, where the legal title was in trustees, are cited together with some cases maintaining the court's inherent jurisdiction to decree a sale of the legal estates of infants in real property, without

drawing any distinction between them. Furthermore, in some cases which involve only the question of the court's power to decree a sale for reinvestment of trust estates in which infants are among the beneficiaries and the legal title is in trustees, the judges, not content with the citation of apposite cases, enter into unnecessary arguments, based on false reasons, if not inapplicable authority, to show that the jurisdiction extends also over the legal estates of infants. This is notably true of the opinion of Chief Justice Bailey in the case of Hale *v.* Hale, 146 Ill. 227, where he states a wrong reason for the rulings of the English chancery courts, cites the case of Huger *v.* Huger, 3 Des. (S. C.) 18, 21, which permitted a sale of an infant's land to pay off a charge against him under his father's will to equalize in value his father's real estate between him and his brother, and gives prominence to the overruled dictum of Ch. Kent in Matter of Salisbury, 3 Johns. Ch. 347. And still others (as, for instance, 10 Enc. Pl. & Pr. 735) even cite cases from States which have conferred this jurisdiction upon courts of equity by statute, to support the inherent jurisdiction of equity to sell the legal estates of infants in real property for reinvestment. Cases from Maryland are cited in this respect; whereas, this inherent jurisdiction of equity was early denied in that State in Williams' case, 3 Bland Ch. 186; and the case of Davis *v.* Helbig, 27 Md. 452, 92 Am. Dec. 646, cites the case of Dorsey *v.* Gilbert, 11 Gill & J. 87, to support the constitutionality of the special acts passed by the legislature of that State for the sale of infants' realty, and shows that the "increasing necessity of these special acts caused the legislature to enact the statutes of 1816, chapter 139, and 1818, chapter 133," which "conferred general power on the courts to decree sales of the real estates of infants, provided they were satisfied it would be for the interest and benefit of the minor."

4 (*a*). But whatever may be regarded as the true rule in equity on this subject, it has become of little practical use in this country, since statutes have been enacted in nearly all the States regulating the sale of infants' legal estates. 10 Enc. Pldg. & Pr. 737; Pomeroy's Equity Jur. §§ 78, 1309; Perry on Trusts, § 610; Tyler on Infancy and Cov. 296; Woerner

on Am. Law of Guardianship, 227.    In this country the States, through their legislatures, possess the same power that the King in England possessed as the protector or parens patriæ of infants, consistent with their constitutional limitations: 10 Enc. Pl. & Pr. 738; Losey v. Stanley, 147 N. Y. 571; Davis v. Helbig, 27 Md. 452, 92 Am. Dec. 649; or that Parliament had in providing by public or private acts for the conversion and sales of infants' legal estates in real property.    At first many of the States passed special statutes or private bills for the sale of such estates of infants, which of itself negatives the inherent jurisdiction of equity in this respect.    10 Enc. Pl. & Pr. 738; Woerner on Am. Law of Guardianship, 228; Perry on Trusts, § 610, p. 202, and note 1.    These were soon followed by general statutes which conferred the jurisdiction either upon courts of equity, law courts of general jurisdiction, or courts of ordinary or probate. 10 Enc. Pl. & Pr. 739; Woerner on Am. Law of Guardianship, 232, 233; Perry on Trusts, § 610, p. 201. In a few States different courts have concurrent or divided jurisdiction to order a sale.    Ibid. In most of the States the jurisdiction by statute is conferred upon the courts of ordinary or probate.    Ibid. Georgia is one of these States; and the court of ordinary in this State is a constitutional court of record, whose jurisdiction is original and exclusive (except by appeal) in many matters, including the appointment of guardians, the maintenance of infants, and the sales of their estates, and is much broader than the jurisdiction conferred on similar courts in other States.    Tucker v. Harris, 13 Ga. 8; Civil Code, §§ 4232, 2541, 2542, 2547.    By acts passed in 1764, 1792, and 1799, the care of orphans (which term includes minor children whose parents are alive: Ragland v. Justices, 10 Ga. 65 (3), 70–73) was committed to the court of ordinary.    Cobb's Dig. 301, 306, 311.    And by the act of December 22, 1823, all infants who have acquired property by descent, devise, gift, or purchase, whose parents are in life, are considered orphans, so as to authorize the courts of ordinary to withhold the property from their parent, or natural guardian, until ample bond is given, or, in lieu thereof, to appoint a general guardian for such infants.    Cobb's Dig. 322; Ragland v. Justices 10 Ga. 72.

The sale of infants' legal estates in real property acquired by descent or devise is, ordinarily, effected through sales under orders of the court of ordinary, in pursuance of the acts of December 18, 1816, and December 23, 1826. Cobb's Dig. 319, 323; *Knapp* v. *Harris*, 60 *Ga.* 403. And the sale of infants' legal estates in real property acquired otherwise than by descent or devise was regulated by the act of December 21, 1827 (Cobb's Dig. p. 325). This statute, so far as is material, reads as follows: "Whereas, . . no power is given to said courts [the inferior courts of the several counties of this State when sitting for ordinary purposes, being the courts of ordinary] to order the sale of any real estate belonging to orphans other than such as is acquired by them from their testator or intestate, by reason of which frequent and manifest injury is sustained by orphans . . holding real estate other than such as is acquired by descent; for remedy whereof be it enacted, that from and after the passing of this act, the justices of the inferior courts of the several counties in this State, when sitting for ordinary purposes, shall be authorized to order a sale of any part, or the whole of the real estate of any orphan or orphans, . . upon application of the . . guardian or guardians, where it is fully and plainly made to appear that the same will be for the benefit of such orphan or orphans, . . under the same rules and restrictions as are by law pointed out for the sale of real estates of testators or intestates." This act was construed in the case of *Crawford* v. *Broomhead*, 97 *Ga.* 614, in a unanimous opinion, which was delivered by the writer, wherein it was held, that "this act, construed with those of which it is amendatory, clearly gave to the courts of ordinary the power to order the sale of the real estate of orphans, whenever it should be made to appear to the court that the sale would be for the benefit of the orphan"; and that this jurisdiction to sell such estates for reinvestment was exclusive in the courts of ordinary, until it was taken from them and conferred upon the judges of the superior courts in term or vacation, by the act of November 11, 1889. (Civil Code, § § 2545, 2546.)

In a word, prior to the act of 1889, the legal estates of infants could be sold for reinvestment only through a guardian

and by order of the courts of ordinary.   And see the case of *Wells* v. *Chaffin*, 60 *Ga.* 677, decided in 1878, which holds that " A sale of realty belonging to minors by their guardian, without an order from the court of ordinary, is not binding on them." Therefore, in the case at bar, it was only necessary in 1871 for the natural guardian of the plaintiffs in error to have filed a bond and applied for an order from the court of ordinary to sell their legal vested estate in remainder, under the restrictions governing the mode of sale of intestate's real estate (Code of 1873, §§ 1803, 1811, 1828, 2559; *Crawford* v. *Broomhead*, supra), which was less strict than the provisions of the above act of 1889, which now governs the sale of infants' legal estates for reinvestment, upon application of their guardians to the judges of the superior courts in term or at chambers.

5. Having reached the conclusion that the order of sale granted in this case in 1871 was not within the inherent jurisdiction of a court of equity over the estate in remainder of the plaintiffs in error, but that, as between the two courts, the proper court to make the order was the court of ordinary, upon the application of a guardian for the remaindermen, the question now arises, whether such power was at that time conferred, either expressly or impliedly, by any statutory or code authority, upon the judges of the superior courts, acting in term or vacation.   This is especially pertinent, as the order of sale in this case was applied for by a summary petition under the statutory jurisdiction of equity.   Sections 4863 and 4864 of the Civil Code (or §§ 4221 and 4222 of the Codes of 1873 and 1882), upon which the defendant in error lays stress in support of the order, read as follows:   " All proceedings *ex parte*, or in the execution of the protective powers of chancery over trust estates, or estates of wards of chancery, may be presented to the court by petition only, and such other proceedings be had as the necessity of each cause shall demand."   " A court of equity is always open, and hence the judges in vacation and at chambers may receive and act on such petitions."   To clearly ascertain the meaning of the "protective powers of chancery over the estates of wards of chancery," as used in section 4863, it is necessary, in the first place, to refer to the inherent juris-

diction of equity in this respect.   From what has already been
said as to the extent of the inherent jurisdiction of equity for
the protection of infants and their estates and making them
wards of court for these purposes, and the inherent jurisdiction
of equity to decree a sale of infants' legal estates in real prop-
erty for reinvestment, which are two entirely distinct subjects,
one of which exists and the other does not, there can be but one
logical answer, and that is, that there is nothing in these sec-
tions of the code which authorizes a judge of the superior court,
in term or at chambers, on a substantive petition, to order the
sale of infants' legal estates in real property for reinvestment.

The cases of *Sharp* v. *Findley*, 71 *Ga.* 654, and *McGowan* v.
*Lufburrow*, 82 *Ga.* 523, which are relied on by the defendant
in error to support the order of sale in this case under § 4863
of the Civil Code, are not in conflict with the views we enter-
tain and do not apply to the facts in the case at bar.   The case
of *Sharp* v. *Findley,* in which the executor and all the devisees'
joined in the petition, was grounded upon the impossibility of
carrying out the provisions of a will.   In such cases, equity
would entertain inherent jurisdiction by bill and decree a sale
of the property to protect the beneficiaries under its ordinary
jurisdiction over trusts (*Sharp* v. *Findley,* 59 *Ga.* 730; *Southern
Marble Co.* v. *Stegall,* 90 *Ga.* 237); and the judge of the supe-
rior court is expressly given the same jurisdiction by statute.
Codes 1873 and 1882, § 4214 (Civil Code, § 4855).   Hence it was
held that this statute in connection with § 4221 of the Codes
of 1873 and 1882 (Civil Code, § 4863) would authorize the judge
at chambers to pass the order of sale in that case.   The case of
*McGowan* v. *Lufburrow,* in which the petition was also presented
by the executrix and all the devisees, was for the sale of a part
of the testator's estate for the immediate payment of trust debts,
in order to protect the rest of the estate from clamorous credi-
tors.   As this was to protect an estate to which the executrix
held the legal title in trust for such purposes, equity would
have entertained jurisdiction for this purpose under its ordinary
jurisdiction over trusts; and hence, too, why the sale in that
case was also held to be legal under the section of the code last
cited; and it was absolutely immaterial, so far as the jurisdic-

tion was concerned, whether the order was signed by the judge in term or at chambers, because his power in either case was the same. In *Blake* v. *Black*, 84 *Ga.* 399, 400, Chief Justice Bleckley classes the cases of *Sharp* v. *Findley* and *McGowan* v. *Lufburrow* as cases involving the protection of equity over trusts; and the writer, who delivered the opinion in the case of *McGowan* v. *Lufburrow*, so designates that case and distinguishes it from the right to sell the legal estates of infants for reinvestment, in the case of *Taylor* v. *Kemp*, 86 *Ga.* 185. And the further contention in behalf of the defendant in error, that when Justice Trippe remarked in his opinion in the case of *Milledge* v. *Bryan*, 49 *Ga.* 397, that the order in that case was passed by the judge below several years before the code went into operation he doubtless had in mind the change made by the above section of the code, is also error. The subject-matter of the case of *Milledge* v. *Bryan* was whether a passive trust for infants before the code conveyed to them the legal estate under the operation of the statute of uses, there being no dispute, if it did, that the judge had no power to order a sale of such estate. He decided in the affirmative, in accordance with all authority. Consequently, his remark no doubt had reference to the code making a passive trust for minors an *executory trust* during their minority, which was not the law before the code, and hence that if the order of sale in *Milledge* v. *Bryan* had been made *since* the code it would have been legal because in the exercise of a jurisdiction over the *trust* estate of minors. See *Askew* v. *Patterson*, 53 *Ga.* 213, 214, where *Milledge* v. *Bryan* is distinguished on this point.

The sections of the code now being considered have been frequently construed by this court; but the court has never gone to the extent assumed in behalf of the defendant in error. In *Iverson* v. *Saulsbury*, 65 *Ga.* 729, Justice Jackson, delivering the opinion of the court, said that they, with the two succeeding sections, forming one chapter, stand together. To quote his words: "These four sections are embodied in chapter sixth, title twenty-fifth, and part third of the Code [1873], and stand together. They appear to vest in the chancellor at chambers full power over trust estates in respect to the removal of trustees, the sale of trust property, and the investment of

trust money. In the exercise of these great powers, chancellors should be cautious and see that the case is clearly made out, and that their wards are protected and their estates are preserved and their rights protected, just as in open court and before a jury it would be their duty to see that the same rights are protected." Chief Justice Bleckley's opinion in *Blake* v. *Black*, 84 *Ga.* 392, 399, 400, also shows that they have relation to trusts. And in *Harvey* v. *Cubbedge*, 75 *Ga.* 794, Justice Blandford, delivering the opinion of the court, said they were codified from the act of February 20, 1854, which authorizes judges of the superior courts in term or at chambers to pass upon matters of trust by petition. Of course, it does not necessarily follow from this that the judge in term or at chambers is restrained from passing on proper petitions to authorize a sale of the legal estates of infants when a court of equity has obtained control of the property in a pending cause within its jurisdiction, or when they can exercise the power in the manner hereinbefore mentioned under some one of the ordinary heads of the court's inherent jurisdiction. But the case at bar does not fall within this class of cases. Among the subjects covering the "protective powers of chancery over trust estates, or the estates of wards of chancery," as used in section 4863 of the Civil Code, and determined by this court, is the power, upon petition, to appoint trustees to fill a vacancy: *White* v. *McKeon*, 92 *Ga.* 344; to order the sale of a part of the trust property to relieve the rest from an indebtedness on all: *Iverson* v. *Saulsbury*, 65 *Ga.* 724 (5), 728, 729; to order the mortgage of trust property to protect and preserve the corpus: *Iverson* v. *Saulsbury*, 68 *Ga.* 801, per Jackson, J., followed in *Weems* v. *Coker*, 70 *Ga.* 746, *Bolles* v. *Munnerlyn*, 83 *Ga.* 727, *Pease* v. *Wagnon*, 93 *Ga.* 363, and *Wagnon* v. *Pease*, 104 *Ga.* 417; to order the sale in whole or in part of property of adults and minors acquired by devise where the legal title remains in the executors, when it is impossible to carry out the trust provisions of a will (*Sharp* v. *Findley*, 71 *Ga.* 654, *Blake* v. *Black*, 84 *Ga.* 392, 399, 400, and *Southern Marble, Co.* v. *Stegall*, 90 *Ga.* 237), or when it is necessary for the payment of estate debts and legacies: *McGowan* v. *Lufburrow*, 82 · *Ga.* 523, and *Blake*

v. *Black*, supra; and to protect a ward of chancery by compelling a trustee to comply with a prior order of court to pay over money for the support of the ward arising out of the latter's trust property: *Obear* v. *Little*, 79 *Ga.* 386.    And among other powers by proceedings ex parte and upon petition, as shown by the cross-references to other parts of the code made by the codifiers in the margin to section 4863, is the appointment and removal of trustees, § 3164; the sale of trust property, § 3172; the investment of trust funds in stocks in which a trustee is not authorized by statute to invest in his own discretion, § 3180; and the passing of interlocutory orders in equitable suits, § 4847, which may include the setting aside of a sum of money out of a fund involved in the litigation for the support of the minor parties.    So that there is no reason or authority upon which to base the claim of the defendant in error, that sections 4863 and 4864 of the Civil Code authorize the judges of the superior courts in term or at chambers to order a sale of the legal estates of infants in real property for reinvestment.    And when this power of sale is given by statute, it has been held to be beyond the jurisdiction of the court to authorize an exchange of the property for other property (Moran *v.* James, 47 N. Y. Supp. 486), and especially, as was asked for in the petition and granted in the order in the case at bar, for stock in a corporation.    Perin *v.* McGibben, 53 Fed. Rep. 96, 97.    And any authority conferred to sell the property for the maintenance of the infant would not be applicable, because that would be an *extinguishment* and not the *protection* of the corpus of the estate.

The only remaining sections of the code conferring power upon the judges of the superior courts in term or at chambers to order the sale of property in which infants may be interested (aside from the sale of homestead property under § 2847 of the Civil Code, and the sale of infants' property upon application of their guardian under the act of November 11, 1889) are §§ 3172 and 4865 of the Civil Code (or §§ 2327 and 4223 of the Codes of 1873 and 1882).    These sections relate to the sale of trust property, and to none other; and it was doubtless under these sections that the petition to sell the property in dispute was made, because the trustee applied for the order as trus-

tee for the mother and children.    It is unnecessary to con-
found the unambiguous statutory jurisdiction upon summary
petition under these sections with the inherent jurisdiction by
.suit in a court of equity.    In such cases the court or judge,
exercising jurisdiction by statute, is restricted by the power con-
ferred by the statute.    Williamson v. Berry, 8 How. (U. S.)
537; Woerner on Am. Law of Guardianship, 232, 233.  Under
these sections, whatever the judge could do in term he could do
at chambers, and whatever he could not do at chambers he
could not do in term.    In the case of Losey v. Stanley, 147 N.
Y. 571, 572, it was unanimously decided that the lower court,
which exercised general equity powers, and which was author-
ized by statute to order the sale of *trust* property upon sum-
mary petition, had no jurisdiction whatever upon such a peti-
tion to sell the legal estate in remainder belonging to infants
or to appoint a guardian *ad litem* to effect such a sale.   And to
the same effect is the case of *Walker* v. *Pope*, 101 *Ga.* 665, in
which Justice Fish, who delivered the opinion of the court,
said : "The principles of law governing this case are well set-
tled and familiar, and will be readily gathered from the head-
notes, read in connection with the reporter's statement of the
facts."    On pages 667 and 668 the reporter's statement shows
that the executor and alleged trustee brought his petition to the
superior court, which was joined and concurred in by the life-
tenant, an adult male, praying for a sale of the property for re-
investment in a farm, upon substantially the same allegations
as set forth in the petition in the case at bar ; that a guardian *ad
litem* was appointed for the named children, who were entitled
to a legal estate in remainder in the property ; that the judge of
the superior court granted the order to sell; and that a sale was
made under the order.    The headnotes show that the only rea-
·sons the plaintiffs (the children) failed to recover in that case
were, first, that those who were capable of understanding their
rights ratified in writing the said sale of the property and the
disposition of the purchase-money, without moving to disaffirm
the same within a reasonable time after reaching their majority;
and, secondly, that the youngest child, who also signed the
ratification paper, but who was too young to comprehend its

purport, although held entitled to recover within seven years from the death of the life-tenant in a several action, could not recover in a joint action with the others whose title had been tolled before the commencement of the suit. In this court, as the judges have almost invariably passed the orders at chambers, the question has often arisen as to the power of a judge of the superior court at chambers to order a sale of the legal estates of infants for reinvestment under the sections now being considered, or by statute generally before the act of November 11, 1889, and has as often been decided in the negative. See *Pughsley* v. *Pughsley*, 75 *Ga.* 95; *Rogers* v. *Pace*, 75 *Ga.* 436; *Taylor* v. *Kemp*, 86 *Ga.* 185; *McDonald* v. *McCall*, 91 *Ga.* 305; *Fleming* v. *Hughes*, 99 *Ga.* 450. These cases are directly in point, and are unquestionably sound in their conclusions. They establish a principle as firmly as any principle can be established. There is not one decision of this court adverse to them, and they therefore form a rule of property in this State which has existed for many years. When these decisions thus denied this power to the judges of the superior courts at chambers, they also, in legal effect, denied the same power to the said judges in term when acting under the statutory jurisdiction by summary petition, because each possesses the same power—one no more nor less than the other. It would therefore be anomalous to hold that this statutory jurisdiction gives the judge in term the power to sell the *legal* estates of infants for reinvestment, and confines the judge at chambers to a sale of trust estates, especially when a court of equity is without the inherent jurisdiction, as we have declared, to order the sale of an infant's legal estate in real property for reinvestment, except in the instances we have specified; and there can be no doubt that in making these decisions this court had in mind the provisions of § 4863 of the Civil Code, as well as of § 4865, which have stood together in the Code for the last thirty-six years. That such is true is shown by the case of *Taylor* v. *Kemp*, 86 *Ga.* 185, where the decision in the case of *McGowan* v. *Lufburrow*, which was made under the provisions of § 4863 principally, was upheld for the purposes of that case, but was denied and distinguished as to the facts in *Taylor* v.

*Kemp;* and also by the case of *Fleming* v. *Hughes*, which cites the case of *Taylor* v. *Kemp*, with others, and denies the jurisdiction without relying upon any special section of the code.

There is nothing in the case of the *East Rome Town Co.* v. *Cothran*, 81 *Ga.* 366, 367, when properly read and considered, that can conflict with the cases above cited, which exist in an unbroken line. On p. 366 Chief Justice Bleckley held that the original order to sell in that case could not bind the infant remaindermen, because, according to *Hill* v. *Printup*, 48 *Ga.* 452, infant beneficiaries in a *trust estate* must be made parties. On p. 367, in connection with the attempted confirmation proceedings, in which the infant remaindermen were made parties, he said: "It is urged that this order of confirmation cured all defects in the title to Freeman, and this *might* be so, *perhaps*, had the judge not been disqualified," and he no doubt had in his mind, at the time, what the rule would have been, in accordance with *Hill* v. *Printup*, if the infant beneficiaries in the *trust estate* in that case had been made parties to a confirmatory proceeding. The minors in the case of *East Rome Town Co.* v. *Cothran*, were not infant beneficiaries in a *trust* estate, as Chief Justice Bleckley himself held on pp. 361 to 366, inclusive; and hence if he had decided that they would have been bound by the order of confirmation, had such order been passed by a qualified judge, the ruling would have been contrary to all the cases cited above on the subject of ordering the sale of infants' legal estates by petition under the statutory jurisdiction, and could not have stood against them.

I think the opinion of the majority of the court virtually concedes that a court of equity has no inherent power to order the sale of the legal estates of infants upon a summary petition; but it is claimed that, while this may be true, still, if the court has jurisdiction to order a sale of the trust property and the trustee applies also for an order for the sale of the legal estate, the court having acquired jurisdiction for one purpose will retain it for all, and will grant such relief as it may deem proper in the premises. In other words, it holds that a court of equity has jurisdiction, even upon summary petition, to decree and order the sale of infants' estates for reinvestment, upon the ap-

plication of the trustee, when the infants have an equitable interest with others in the life-estate and are the sole owners of a legal estate in the remainder; on the ground that equity having acquired jurisdiction over the equitable life-estate for the purpose of a sale, that per se invests the court with the power to retain the jurisdiction to order a sale of the legal estate in remainder also. With great deference to the opinion of my associates, I think that this principle has no application to a proceeding such as this. It applies to cases of *litigation* where the complainant has an equitable remedy for one purpose and also a legal remedy touching the subject-matter of the litigation against the defendant, and the complainant seeks to enforce his equitable remedy, in which cases the jurisdiction of equity may be retained to grant full relief and avoid a multiplicity of suits between the litigant parties. In a word, there must be a controversy between litigant parties before the court, to bring this principle into action or life. See Pom. Eq. Jur. §§181, 223–230, 231–242, where the whole subject is discussed, with citation to numerous authorities, including some in this State. An examination of the Georgia cases in which the principle has been applied will show that in all of them there was a controversy between the parties and that equitable and legal rights were involved therein. And the same appears to be true of the decisions of the other courts. The Court of Appeals of New York in an unbroken line of decisions, has applied the principle that where equity has acquired jurisdiction for one purpose it will retain it to grant full relief to the parties litigant; yet the principle is not applied in proceedings where a trustee applies to a court of equity to sell or mortgage the life-estate and the legal estate in remainder of infants. In fact, the denial to a court of equity of the inherent jurisdiction to order a sale of infants' legal estates arises in many cases where such estates are in remainder after an executory trust extending over and terminating with the life-estate. The above principle, then, arises in cases of litigation under the ordinary heads of equity jurisdiction; and, as Chief Justice Andrews pertinently said in the case of Losey *v.* Stanley, 147 N. Y. 560, 570, in delivering the opinion of the court, where the trustee, whose estate extended over

the life-estate only, applied to equity to include in a sale the legal estate of. infant remaindermen, "The question of the inherent power of a court of equity to order a sale of an infant's real property, upon the theory of a supposed benefit to him, is quite distinct from . . the power of courts in the exercise of their ordinary jurisdiction to establish or enforce rights of property between parties to a litigation, whether infants or adults."

The supposed difficulty of making a sale of the trust estate for life by one court or jurisdiction and the sale of the legal estate in remainder by another is not sound, as is shown by the case of Losey *v.* Stanley, supra, and many others. The same difficulty arises when a petition is presented to a judge of the superior court at chambers, in this State, to order a sale of a trust estate for life and a legal estate in remainder. In such cases he can only order a sale of the *trust* estate. *Rogers* v. *Pace,* 75 *Ga.* 436; *Fleming* v. *Hughes,* 99 *Ga.* 444. What greater efficacy, or sanctity, or jurisdiction, should be given to the act of the same man when he merely walks from his private chambers into the court-room with the order and immediately signs it there? None that I can see in a case like this.

As to the distinction between the exercise, by a court of chancery, of original and inherent jurisdiction and the exercise, by the same court, of jurisdiction conferred by statute, see Williamson *v.* Berry, 8 How. 536, 537, and Boswell *v.* Otis, 9 How. 336. These cases rule that where jurisdiction is given a court of equity by statute and a proceeding is filed thereunder, the court can not combine its original inherent jurisdiction with the statutory jurisdiction. The statutes of Georgia giving courts of equity at chambers jurisdiction to sell trust estates, those courts can not combine their original and inherent jurisdiction with that conferred by statute, so as to enable them, in chambers or on a summary petition in term time, to order the sale of legal estates.

For these reasons I can not agree to the opinion of the majority of the court on the questions above discussed.